Rodney B. **SHIELDS,** for himself and all others similarly situated, Plaintiff,

v.

**FIRST NATIONAL BANK OF ARIZONA,** a national banking association, Defendant.

**Civ. No. 71–686.**

United States District Court,
D. Arizona.

June 5, 1972.

Rodney B. Shields, Honolulu, Hawaii, for plaintiff.

James K. LeValley, of Streich, Lang, Weeks, Cardon & French, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

This is an action pursuant to § 130(e) of the Truth in Lending Act of 1968 (hereinafter "Act"), 15 U.S.C. § 1640(e). Plaintiff, a holder of a BankAmericard, has sued to redress an asserted violation of the Act by defendant. Plaintiff alleges defendant failed to make the proper disclosures required by the Act.

Plaintiff has applied to the Court for an order designating this a class action under Rule 23(c)(1) of the Federal Rules of Civil Procedure. The plaintiff is an attorney admitted to the practice of law in the state of Arizona but presently a resident of Hawaii, and seeks to be appointed the attorney for the class.

Both parties have filed memoranda and exhibits. Besides filing a response,

defendant has filed two supplemental memoranda. Plaintiff has filed a reply to defendant's response and a reply to defendant's supplemental responses.

In order to maintain this suit as a class action, plaintiff must satisfy the four requirements of Rule 23(a) and any one of the requirements of the three subdivisions of Rule 23(b). The Court concludes that under the facts of this particular case, plaintiff has not met his burden under Rule 23.

■ First, the bank contends in its second supplemental memorandum that Mr. Shields, by proposing himself as representative party and as counsel for the class, fails to fulfill the requirements of Rule 23(a)(4), i.e., that plaintiff will not "fairly and adequately protect the interests of the class." Rule 23(a)(4), Federal Rules of Civil Procedure.

This point is well taken as Judge Frey pointed out in Shields v. Valley National Bank, 56 F.R.D. 448 (D.C.Ariz.1972), a case in which plaintiff sued another Arizona bank under similar circumstances and also sought to be both the representative party and the attorney for the class. Judge Frey states (and this Court fully agrees):

"It appears that Rodney B. Shields has failed to show that he can and will protect the interests of the members of the class. In fact, he has demonstrated just the opposite. It is necessary for the attorney to be competent to represent the class. Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (D.C.W.D.Pa.1971). His actions tend to demonstrate a lack of experience and lack of understanding of the

Federal Rules of Civil Procedure and the Rules of this District. In his pleadings he has failed to follow these Rules. The Court further feels that Shields has not demonstrated competence to represent the class because he seeks to be not only the attorney for the class and be awarded a fee for his representation, he seeks in the same action, personal relief. The practice involved does not seem to the Court to comport with the high quality of objectivity, duty and integrity required of lawyers practicing in this Court or elsewhere. This case seems to involve a questionable method of soliciting legal business and such solicitation should not be encouraged." At pp. 449–450.

■ Traditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of the absent class member. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); see Hansberry v. Lee, 311 U.S. 32, 61 S. Ct. 115, 85 L.Ed. 22 (1940). This is a principle with which this Court agrees and on the basis of the facts present here, the court concludes that plaintiff has not met the requirements of Rule 23(a)(4).[1]

Even if Mr. Shields can overcome his problems with respect to fulfilling the requirements of Rule 23(a)(4), he must satisfy one of the requisites of 23(b). Plaintiff has chosen to predicate the maintenance of the class action in this case upon Rule 23(b)(3). To succeed under this part he must show that: " . . . the questions of law or fact

---

1. In Plaintiff's Reply to Defendant's Supplemental Memorandum, he states his intention to appoint another attorney "to handle all communications with the class . . . . The present attorney for the plaintiff class [Mr. Shields] would continue only as a behind the scenes expert on the truth in lending." Not only is the Court not told anything about the pro-

posed new attorney's qualifications or of his ability to handle and adequately protect the interests of the class in a complex litigation with thousands of class members but Mr. Shields makes it clear that he is apparently going to still be the "behind the scenes" attorney. This Court finds such a proposal unsatisfactory.

common to the members of the class predominate over any questions affecting only individual members, *and that a class action is superior to other available methods* for the fair and efficient adjudication of the controversy." (Emphasis added.)[2] The Court will only consider whether a class action is "superior to" other available methods since this phrase is dispositive of the issue.

■ Subparts (A) through (D) of Rule 23(b)(3) are only suggestive, not exhaustive of the factors that should be considered in deciding whether to allow a Rule 23 class action. Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.C.Kan. 1972); Shields v. Valley National Bank, 56 F.R.D. 448 (D.C.Ariz.1972); Buford v. American Finance Co., 333 F.Supp. 1243 (N.D.Ga.1971); Proposed Amendments to the Rules of Civil Procedure, Advisory Committee's Notes, 39 F.R.D. 69, 104 (1966); see Rogers v. Coburn Finance Corp. of De Kalb, 54 F.R.D. 417 (N.D.Ga. February 18, 1972); Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. February 14, 1972).

Defendant makes essentially two arguments: (1) that the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 for each violation for some 72,000 class members would be a "horrendous, possibly annihilating punishment, unrelated to any damage to the proposed class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth-in-Lending Act."

■ Traditionally, the purpose of a class action is to give incentive to litigate claims that would otherwise not be litigated because they are too small as to make it impractical to bring individual suits.[3] Eisen v. Carlisle & Jacquelin, *supra*; Wilcox v. Commerce Bank, *supra*; C. Wright, Handbook on the Law of Federal Courts, § 72 (2nd ed. 1970).[4]

---

2. Rule 23(b)(3) reads in its entirety:
   [t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

3. It is interesting to note that there have apparently been no other suits filed against defendant on similar grounds by other cardholders. Plaintiff does not name other cardholders who are interested in bringing suit but states that he "knows of at least one other cardholder who is awaiting the outcome of this litigation before asserting his claim."

4. In actual practice, however, it is at least debatable whether the small claimant has received much benefit from amended Rule 23. Judge Lumbard, dissenting in the *Eisen* case, 391 F.2d 555 (2nd Cir. 1968), caustically remarked that "the only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them." This view finds some support in Judge Edenfield's forthright comments on the abuse of the rule in Buford v. American Finance Company, 333 F.Supp. 1243 (N.D.Ga.1971):
   "Today, however, many claims which simply did not exist have been brought to life by our courts through the judicial act of allowing a class action to be maintained. Although some courts say these claims are not brought because plaintiffs believe the potential recovery would be too small to justify the time and expense of litigation, the plain truth is that in many cases Rule 23(b)(3) is being used as a device for the solicitation of litigation. This is clear-

The Truth in Lending Act, however, is drafted so that the incentive offered by a class action is not necessary to enforce the provisions of the Act. First, 15 U.S.C. § 1640(e) provides that an individual plaintiff will recover a minimum of $100 plus attorneys fees and costs. The Act contemplated that the damages involved in the violations of the Act would often be under $100 and that the attorney's fee should not be measured as a percentage of the total judgment.[5] Thus by inserting 15 U.S.C. § 1640(e) into the Act, Congress removed one of the principal reasons why a class action would be superior to individual suits, i.e., each individual member of the proposed class has an adequate remedy by means other than a class action.

Defendant states that there are approximately 72,000 BankAmericard holders that would be affected by a class action. At a minimum damage of $100 apiece, and assuming that each monthly statement during the one-year statutory period constituted a separate violation, the proposed class would be entitled to a sum of approximately $100,000,000.00 if a violation of the Act was found.

Recent cases have taken such facts into consideration and have emphasized the impact of suits such as this one on corporations charged under the Act. Where an industry may possibly suffer "a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act," several courts have recently found that a class action is not "superior to" other alternatives and does not "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Wilcox v. Commerce Bank, *supra*; Shields v. Valley National Bank, *supra*; Rogers v. Coburn Finance Corp. of De Kalb, *supra*; Ratner v. Chemical Bank New York Trust Co., *supra*; Buford v. American Finance Co., *supra*; Amendments to Rules of Civil Procedure, Advisory Committee's Notes, 39 F.R.D. 69, 103 (1966); see Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D.Fla.1972).

Upon the undisputed facts of this case it seems fair to conclude that the members of the proposed class suffered no damage at all or that, at most, some amount representing a small fraction of $100. Wilcox v. Commerce Bank, *supra*; Ratner v. Chemical Bank New York Trust Co., *supra*. Likewise, the defendant has gained little if anything from the violations alleged by plaintiff. That is not to say the Act should not be enforced but only that the superiority of a class action under these circumstances is inappropriate where the plaintiff can show no damage and the defendant's gain is questionable.[6] See Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D.N.

---

ly an 'undesirable result' which cannot be tolerated." (at 1251)
Wilcox v. Commerce Bank, *supra*.
In Hackett v. General Host Corp., 455 F.2d 618 (3rd Cir. 1972), an antitrust case for treble damages, the court noted that the prime beneficiaries of the consumer class action are not the consumers but, instead, the lawyer who has the quixotic opportunity of representing an incredibly large class of unknown clients. *Id.* at 625. Judge Frey in Shields v. Valley National Bank, *supra*, also discusses this phenomenon.

5. In Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972), the court ruled that the plaintiff was entitled to judgment of $100 in minimum damages and $20,000 in attorney's fees.

6. In plaintiff's reply to defendant's supplemental memorandum, plaintiff apparently seeks to change his ground and now limit the class to those cardholders who received BankAmericard cash advances from defendant. From 3,000 to 7,000 persons received cash advances each month from December, 1970, to December,

Y.1971). The recent cases which held a class action to be inferior to other methods reason that the "broad and open-ended terms" of Rule 23 "call for the exercise of some considerable discretion of a pragmatic nature" and emphasize that the allowance of a class action in such cases is essentially inconsistent with the specific remedy supplied by the Act. Wilcox v. Commerce Bank, *supra*; Shields v. Valley National Bank, *supra*; Ratner v. Chemical Bank New York Trust Co., *supra*; Rogers v. Coburn Finance Corp., *supra*.

Recently, a special committee on Rule 23 of the Federal Rules of Civil Procedure of the American College of Trial Lawyers filed its report and recommendations, based on the uses and abuses of the rule in actual practice. This Court is in substantial agreement with the conclusion reached by the special committee:

" . . . The original avowed twofold purpose of the (b)(3) action was 'to achieve economies of time, effort and expense' and to promote uniformity of decision 'without sacrificing procedural fairness.' [Advisory Comm. Note, 39 F.R.D. 98, 102–103 (1966).] Judicial opinions added a third, saying that the class action 'provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' [Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968). See Ford, Federal Rule 23: A Device for Aiding the Small Claimant, 10 B.C.Ind. & Com.L.Rev. 515 (1968).]

The conclusion of this Committee is that Rule 23, as written and as applied over the last half decade, has failed to achieve its purposes. We suggest that in the areas of judicial economy and fairness to the parties,

the experienced results have been directly contrary to the intended purposes. The (b)(3) class suit has mandated heavy expenditures of judicial time, effort and expense. The expenditures have been sustained only by sacrificing procedural and substantive fairness to the party opposing the class. Nor does it appear that these burdens can in any sense be justified by the limited benefits accruing to class claimants." Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, American College of Trial Lawyers (March 15, 1972), at 5–6, quoted in Wilcox v. Commerce Bank, *supra*, 55 F.R.D. at pp. 136–137.

Plaintiff argues that large corporations would not be compelled to comply with the terms of the Act if the court were to deny the maintenance of this suit as a class action.

■ The potential recovery in this case—calculated to be at least $8,000,000 for each alleged violation of the Act— would certainly be a powerful deterrent to violations of the Truth in Lending Act. On the other hand, it is questioned whether the deterrent effect of the rule should be granted such a high priority. "The cost in judicial time and consequent impairment of rights of other litigants appears too high a price to pay for deterrence which can be effected through alternative means." Wilcox v. Commerce Bank, *supra*, at p. 138, quoting Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, American College of Trial Lawyers (March 15, 1972), at 5–6. Furthermore, it manifestly appears that Congress intended the $100 minimum statutory damage to serve as deterrent, especially when combined with the species of "private attor-

---

1971 (month this action was filed). Although this fact would substantially de-

crease defendant's damages, the Court feels that the same rationale is applicable.

**448**

ney general" created by 15 U.S.C. § 1640(e). *Wilcox v. Commerce Bank, supra.* Once again, there is a basic inconsistency recognized by the *Wilcox, Shields, Ratner* and *Rogers* cases between the class action and the statutory procedure.

Upon the persuasive reasoning of the *Wilcox, Shields, Rogers, Ratner* and *Burford* cases and the facts and circumstances of the instant case, and in light of the purposes of the class actions rule, this Court holds that plaintiff's application for an order designating this a class action is denied.

In addition to the foregoing motion, there are several other matters pending for determination:

1. Plaintiff's motion to strike.

2. Plaintiff's motion for an order compelling answers to interrogatories.

3. Plaintiff's motion for leave to serve supplemental complaint.

4. Defendant's alternative motion to file a compulsory counterclaim.

Plaintiff's motion to strike the alleged *insufficient defenses* contained in paragraphs VI and XV of defendant's answer is without merit since these paragraphs present questions of law and fact which the Court feels require decision at a later date. J. Moore, Moore's Federal Practice, ¶ 12.21[3] (2nd ed. 1971), and cases cited.

Plaintiff's motion for an order compelling answers to plaintiff's interrogatories 1 and 3 is denied on the basis that this order makes the answer to these interrogatories no longer relevant.

Plaintiff's motion to amend his complaint is denied with leave to refile in compliance with Local Rule 10(e).

The Court having denied plaintiff's motion to maintain a class action, there is no need to consider defendant's alternative motion for leave to file a compulsory counterclaim.