**Marie WILCOX et al., Appellants-Plaintiffs,**

v.

**COMMERCE BANK OF KANSAS CITY, a corporation, Appellee-Defendant.**

No. 72–1494.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 13, 1972.

Decided Feb. 20, 1973.

Rehearing Denied March 19, 1973.

Ronald L. Gold, Shawnee Mission, Kan., for appellants.

Thomas J. Wheatley, Kansas City, Mo. (Maurice J. O'Sullivan, Jr., and Edward M. Boddington, Jr., Kansas City, Kan., on the brief), for appellee.

Before LEWIS, Chief Circuit Judge, McWILLIAMS, Circuit Judge, and CHRISTENSEN, Senior District Judge.[1]

CHRISTENSEN, Senior District Judge.

Appellee is a large commercial bank which operates for its area a franchise credit card system known as BankAmericard. Appellants are holders of such credit cards of the bank. Their complaint in the district court was "on behalf of themselves and all other credit card holders" of appellee for alleged violations of the federal Truth in Lending Act, 15 U.S.C. § 1637(a)(1) and (4) and (b)(2), (5) and (6),[2] and for the relief

---

1. Of the District of Utah, sitting by designation.

2. "§ 1637. Open end consumer credit plans—Required disclosures by creditor.

   "(a) Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

   "(1) The conditions under which a finance charge may be imposed, including the time period, if any, within which any credit extended may be repaid without incurring a finance charge.

   .    .    .    .    .

   "(4) Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

   .    .    .    .    .

   "Statement required with each billing cycle

   "(b) The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each

provided by 15 U.S.C. § 1640(a)(1) and (2).[3] The merits of the named plaintiffs' claims were not reached[4] as the district court denied their motion[5] for determination that the case could be maintained as a class action.[6] Appellants sought in this court and were granted an interlocutory appeal of such denial upon appropriate indication from the trial court that it was of the opinion that the order of denial involved a controlling question of law as to which there was substantial ground for differences of opinions and that an immediate appeal from the order may materially advance the ultimate determination of the litigation. 28 U.S.C. § 1292. The sole question before us is whether the court below abused its discretion in refusing to permit the suit to be maintained as a class action pursuant to Rule 23, Fed.R.Civ.P.[7]

billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable :

. . . . .

"(2) The amount and date of each extension of credit during the period, and, if a purchase was involved, a brief identification (unless previously furnished) of the goods or services purchased.

. . . . .

"(5) Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and, unless the annual percentage rate (determined under section 1606(a)(2) of this title) is required to be disclosed pursuant to paragraph (6), the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

"(6) Where the total finance charge exceeds 50 cents for a monthly or longer billing cycle, or the pro rata part of 50 cents for a billing cycle shorter than monthly, the total finance charge expressed as an annual percentage rate (determined under section 1606(a)(2) of this title), except that if the finance charge is the sum of two or more products of a rate times a portion of the balance, the creditor may, in lieu of disclosing a single rate for the total charge, disclose each such rate expressed as an annual percentage rate, and the part of the balance to which it is applicable."

(See also the Regulations of the Federal Reserve Board, 12 C.F.R. Part 226.)

3. "§ 1640. Civil liability—Failure to disclose.

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

"(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

4. Ruling on plaintiffs' motion for summary judgment on the issue of liability was deferred pending the determination of class action status. See generally, Annot., Civil Remedies of Consumer for Violation of Truth in Lending Act (15 U.S.C. §§ 1601–1644, 1661–1665), 11 A.L.R.Fed. 815 (1972).

5. Based on Rule 23(c)(1), Fed.R.Civ.P.: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

6. See Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kan.1972).

7. Appellants' brief enumerates also the questions of whether a denial properly could be based on grounds "outside the face of Rule 23" and whether the Truth in Lending Act "has been exempted by either Congress or the United States Supreme Court from Rule 23". As hereafter explained, these queries are really encompassed by the main issue. But they need not be considered separately or in the abstract and, indeed, should not be, since they imply assumptions not involved necessarily in the action of the lower court, i. e., that it failed to consider criteria established by the Rule or that its decision could be justified only if such actions as this had been expressly or impliedly excluded from the application of Rule 23 under all circumstances.

■ Those similarly situated on whose behalf the action purportedly was brought number approximately 180,000 persons. There is no question but that appellee's business involves an "open end consumer credit plan" covered by the Act [8] and that plaintiffs and members of the proposed class are cardholders under said plan.[9] Plaintiffs' second amended complaint, on the basis of which the class action aspect of the case was proposed and terminated, clearly alleged violations of the Act as against plaintiffs and the members of the proposed class [10] and on their behalf sought damages of at least $100.00 for each class member and as to each violation [11] totaling "in excess of One Million Dollars per month" within the one-year period of limitations provided in the Act.[12] It has been pointed out by appellee that since five separate violations as to each member of the class are alleged, each presumably occurring monthly, its penalty exposure might exceed one billion dollars.

The basic problem of the amenability of civil suits for violation of the Truth in Lending Act to class action treatment has been before numerous district courts with varying results.[13] Insofar as we are aware no court of appeals has yet

---

8. 15 U.S.C. § 1602(i) defines such a plan as one "prescribing the terms of credit transactions which may be made thereunder from time to time and under the terms of which a finance charge may be computed on the outstanding unpaid balance from time to time thereunder."

9. "The term 'cardholder' means any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." 15 U.S.C. § 1602(m).

10. Specifically, appellants asserted that the appellee bank with respect to the named plaintiffs and each member of the class deliberately and wilfully violated the Act and implementing regulations in that it failed to disclose the nominal annual percentage rates on cash advances as required by 15 U.S.C. § 1637(a)(4), failed to disclose accurately the period in which a finance charge could be avoided as required by § 1637(a)(1), failed to disclose adequately transactions, during the cycle as mandated by § 1637(b)(2), and prior to October, 1971, failed to disclose the nominal annual percentage rate in cases where a finance charge was not imposed for amounts over $900 corresponding to the periodic rates as required by § 1637(b)(5) and (6). The Second Amended Complaint contains no allegations or other indication that any members of the proposed class suffered any actual damages by reason of any of these alleged violations, it being alleged with respect to damages only "[t]hat each plaintiff is entitled to a minimum of $100.00 up to $1,000.00 per month as provided for in Section 130 (15 U.S.C. § 1640) for each month that plaintiffs had an outstanding balance. . . ."

11. See 15 U.S.C. § 1640(a) note 3, *supra*.

12. "15 U.S.C. § 1640(e). Jurisdiction of courts.
"Any action under this section may be brought in any United States district court, or any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

13. *Class actions held proper:*
Berkman v. Westinghouse Electric Corp., Civil No. 69C 2056 (N.D.Ill., filed June 25, 1970). 4 CCH Consumer Credit Guide ¶ 99,268 (1972).
Douglas v. Beneficial Finance Co. of Anchorage, 334 F.Supp. 1166 (D.Alas. 1971).
Eleando v. McGinnis Used Cars, Civil No. 70–63 TUC (D.Ariz., filed Apr. 28, 1971).
Flickinger v. Horseshoe Development Company, Civil No. 11–334–C–1 (S.D. Iowa, filed March 10, 1972).
Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307, (E.D.Mo., 1971) (four consolidated cases).
Katz v. Carte Blanche Corp., 52 F.R.D. 510, 53 F.R.D. 539 (W.D.Pa.1971).
Lamar v. H & B Novelty '& Loan Co., 55 F.R.D. 22 (D.Or.1972).
Martin v. Family Publications Service, Inc., Civil No. 5829 (D.Vt., filed June 30, 1970).
Richardson v. Time Premium Co., Civil No. 70–1814–Civ–JLK (S.D.Fla., filed Feb. 5, 1971).
Smith v. International Magazine Service of Mid Atlantic, Inc., Civil No. 71–16–F (N.D.W.Va., filed Oct. 29, 1971), 4 CCH Consumer Credit Guide ¶ 99,249 (1972).
Zachary v Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971).
*Class Actions Held Improper:*
Allerton v. Century Credit Corp., Civil No. 70–1614–Civ–PF (S.D.Fla., filed Aug.

squarely decided the issue, although it is known that several appeals presenting it are now pending elsewhere.[14]

The reasoning of the court below in denying class action status in this case is similar to that by which other district courts have reached the same conclusion.

2, 1971), 4 CCH Consumer Guide ¶ 99,-271. Alsup v. Montgomery Ward & Co., Inc., 57 F.R.D. 89 (N.D.Cal.1972) (two consolidated cases).

Boggs v. Alto Trailer Sales, Inc., Civil No. 71–1271 (E.D.La., filed Aug. 8, 1972).

Buford v. American Finance Co., 333 F. Supp. 1243 (N.D.Ga.1971), (nine consolidated cases).

Castaneda v. Family Publications Service, Inc., Civil No. C–2317 (D.Colo., filed July 2, 1971).

Garza v. Chicago Health Clubs, 56 F.R.D. 548 (N.D.Ill.1972).

Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D.Fla.1972).

Goldman v. The First National Bank of Chicago, (N.D.Ill.1972), 56 F.R.D. 587 (N.D.Ill.1972).

Grubb v. Dollar Loan Co., Civil Actions Nos. 15550, 15976 (N.D.Ga., filed May 26, 1972).

Haynes v. Logan Furniture Mart, Inc., No. 70C 1827 (N.D.Ill., Sept. 20, 1972).

Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa 1972).

Kriger v. European Health Spa, Inc., of Milwaukee, Wis., 56 F.R.D. 104 (E.D. Wisc.1972).

Moon v. Courtesy Finance Co., Civil No. 15087 (N.D.Ga.).

Mourning v. Family Publications Service, Inc., 4 CCH Consumer Credit Guide ¶ 99,632 (S.D.Fla.1971).

Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270 (S.D.N.Y. 1971), 54 F.R.D. 412 (S.D.N.Y.1972).

Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189 (C.D.Cal.1972).

Roesel v. The Fulton National Bank of Atlanta, Civil Action No. 15376 (N.D.Ga., filed May 25, 1972).

Rogers v. Coburn Finance Corp. of DeKalb, 53 F.R.D. 182 (1971), vacated, filed Dec. 1, 1971), order terminating class action [reinstating order in 53 F.R.D. 182], 54 F.R.D. 417 (N.D.Ga.1972).

Shields v. First Nat'l Bank of Arizona, 56 F.R.D. 442 (D.Ariz.1972).

Smith v. Customers Loan Corp., Civil No. 15253 (N.D.Ga., filed Aug. 10, 1971).

Syna v. Diners Club, Inc., 49 F.R.D. 119 (S.D.Fla.1970).

14. Informal inquiry of clerks' offices reveals that of the decisions referred to

Judge O'Connor points out in his memorandum decision[15] that in order to maintain their suit as a class action plaintiffs must satisfy the four requirements of Rule 23(a) and any one of the three subdivisions of Rule 23(b).[16] The requirements of Rule 23(a) were found

in note 13 only Smith, Lamar and Syna have been appealed. Insofar as has been learned arguments in these appeals have not yet been heard.

15. 55 F.R.D. 134.

16. Fed.R.Civ.P. 23. Class Actions

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) The prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of

to have been met. The remaining question in the court's view was whether subdivision (b)(3), "the only one of the three subdivisions which might apply to plaintiffs", was satisfied as well. Attention was focused upon whether the class action was "superior to" other available methods "because that issue appears to be dispositive of the case".

Impressed with Judge Frankel's reasoning in the leading case of Ratner v. Chemical Bank New York Trust Company, 329 F.Supp. 270 (S.D.N.Y.1971), the trial court found that case, and Rogers v. Coburn Finance Corp. of Dekalb, 53 F.R.D. 182 (N.D.Ga.1971), to be more persuasive than Katz v. Carte Blanche Corporation, 52 F.R.D. 510, 53 F.R.D. 539 (W.D.Pa.1971), another leading case sustaining the propriety of class action proceedings under similar circumstances. Factors the court reemphasized were the special and particular authorization of the Act, 15 U.S.C. § 1640(e), creating a species of "private attorney general" to participate prominently in enforcement; the minimum damages of $100 plus costs and attorney's fees recoverable without proof of any actual damages; the huge potential liability for alleged violations of the Act should the class action be

maintained to its conclusion; the lack of any need or justification for class action proceedings in the circumstances of a Truth in Lending case; and the "absurd and stultifying extreme" the case would assume as a class action in spite of the essentially inconsistent remedy prescribed by Congress as a means of private enforcement. Exercising that "considerable discretion of a pragmatic nature" required by the "broad and open ended terms"[17] of Rule 23, Judge O'Connor determined that a class action in this case was not superior to the statutory method of individual recoveries. He, as did Judge Frankel in *Ratner*, considered the available statutory remedy vis-a-vis the "horrendous, possibly annihilating punishment, unrelated to any damage", which would be a likely product of cases such as this if permitted to proceed as class actions. He also advanced further reasons to the same effect "inherent in the purposes of a class action" and exemplified by current criticisms of the operation of Rule 23.[18] He indicated his view that the application of class action treatment to Truth in Lending cases would be an over-extension of the Rule.[19]

members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

. . . . "

17. Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412, 416 (S.D. N.Y.1972), *supra*. See also Marvin E. Frankel, "Some Preliminary Observations Concerning Civil Rule 23", 43 F.R.D. 39 (1967): "The Rule—quite deliberately, I think—tends to ask more questions than it answers. It is neither a set of prescriptions nor a blue print. It is, rather, a broad outline of general policies and directions. As the commentators have said, it confides to the district judges a broad range of discretion."

18. Citing the Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, American College of Trial Lawyers (March 15, 1972, pp. 5–6), Judge Edenfield's comment on the use of the Rule in Buford v. American Finance Company, 333 F. Supp. 1243, 1251 (N.D.Ga.1971), Judge Lumbard's dissent in Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 571 (2d Cir. 1968), and an observation by Professor Wright with reference to this court's opinion in Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), that if such "receptive spirit" encourages "courts to allow maintenance of class actions in controversies that are unmanageable by this device, the rule may come into disrepute even for the cases to which it is well suited." C. Wright, Law of Federal Courts § 72, p. 307 (1970).

19. One of the decisions most recently published on the subject is Shields v. First National Bank of Arizona, 56 F.R.D. 442, (D.Ariz.1972). In that case Judge Cop-

This latter aspect of the opinion below doubtlessly inspired appellants' basic thesis that the ruling was a policy decision which cavalierly denied class action status to such actions generally despite their being within, or even required by, the criteria laid down in Rule 23. In variation of this theme appellants say that the decision flies in the face of the established rule that "if there is to be any error made, let it be in favor and not against the maintenance of the class action";[20] that the trial court failed to consider criteria established by the Rule itself; that it improperly considered the merits of the case in arriving at its de-

cision, and that the Truth in Lending Act has not been exempted expressly or impliedly from the application of Rule 23.

■ Apart from any inherent incongruity between the remedies provided by the Truth in Lending Act and Rule 23, we agree that there is nothing in the Act itself, the Rule, or the notes of the Advisory Committee on Rules of Civil Procedure with respect to it which expressly or impliedly precludes class actions in this type of case. The legislative history of the Act throws scant light on the problem.[21] To find any con-

ple, in disapproving class action treatment of a comparable proceeding, referred extensively to Judge O'Connor's opinion and held in line with it not that the Act should not be enforced but that its application under these circumstances is inappropriate. As did Judge O'Connor, 55 F.R.D. 134, 135, he found the special factors in such cases to go beyond and control the "four non-exhaustive considerations found in subdivision (b) (3) of the Rule itself." Judge Copple noted that these subdivisions were "suggestive, not exhaustive." 56 F.R.D. at 445.

20. Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), *supra.*

21. Insofar as we have been able to determine there is in the legislative history of the Act *no allusion to the possibility of* class actions in Truth in Lending cases. Administrative enforcement is emphasized. House report No. 1040 of the Committee on Banking and Currency, to which was referred H.R. 11601 containing the disclosure provisions in question, emphasizes administrative enforcement stating: "Your committee believes that administrative enforcement of the credit disclosure features of the bill is fundamental to its legislative purpose . . . For the relatively unsophisticated consumer, particularly those of modest means, administrative enforcement will provide their only protection against unscrupulous merchants or lenders. Such consumers neither will have the means for instituting their own civil suits, nor adequate knowledge or experience to enable them to file a complaint through proper channels to obtain redress through the Attorney General in a criminal action. Administrative enforcement can provide the broad and effective application of the principle of disclosure called for in the bill." 2 U.S.Code Congressional and

Administrative News, 90th Congress, Second Session 1968, p. 1975. The committee report later refers to the civil and criminal penalties to be provided by the bill without any notice being taken of the possibility of class actions and with renewed emphasis upon administrative enforcement: "While primary enforcement of the bill would be accomplished under the administrative enforcement section discussed above, further provision is made for the institution of civil action by an aggrieved debtor." *Ibid.*, p. 1976. Appellee's brief, however, cites in support of its position that the Act does not contemplate class actions for its enforcement, a statement of Senator Frank E. Moss (D.-Utah), Chairman of the Consumer Subcommittee of the Senate Commerce Committee, made while conducting hearings on later legislation, the Consumer Protection Act of 1969. Senator Moss, who was actively involved in the Truth in Lending legislation, remarked to a witness, Assistant Attorney-General Richard McLaren, "I do not believe class actions are permissible under Truth-in-Lending." Mr. McLaren responded by stating that the civil right of action provided for by the Act was subject to the Federal Rules of Civil Procedure and therefore amenable to class action. Senator Moss replied, "My recollection did not bring that up. Perhaps you may want to annotate that for us, if you could, and send it for the record." Mr. McLaren's letter of Feb. 26, 1970, printed in the record of the subcommittee hearings, reiterates the opinion he expressed to Senator Moss. Hearings Before the Consumer Subcommittee of the Senate Committee on Commerce on S. 2246, S. 3092 and S. 3201, 91st Cong., 1st & 2d Sess., ser. 91–43, pt. 1, at 27 (1970).

gressional intent to preclude at all events treatment of such cases under Rule 23 would be a work of clairvoyance and not of construction or interpretation.

On the other hand, notwithstanding the likelihood that most if not all of the requirements expressed in the Rule would be present, there is nothing to suggest a congressional intent that Truth in Lending cases should always, or generally, be handled as class actions. Any automatic application of the Rule irrespective of its realistic implications would be just as improbable as a matter of congressional intent as the total preclusion of its use in consumer suits of this nature. If we were to hazard a reconstruction of pertinent congressional intent from the enactment of the Truth in Lending Act, it would be that a mandate for general class action treatment of all of these cases, on the one hand, or for none of these cases as class action, on the other, was not intended in view of a congressional confidence in case by case determinations by qualified and informed trial judges with a wide general discretion and specific leeway under Rule 23 itself to avoid inferior, unfair or senseless applications of it.

We cannot agree that Esplin v. Hirschi, *supra*, dictates a position in this circuit inhospitable to such a discretion as to Truth in Lending cases. That case turned primarily upon whether common questions were predominant in a securities case where class action treatment was not unusual and in which it threatened no far-reaching consequences one way or another. This court was there persuaded that class action treatment, contrary to the views of the trial judge, was called for. Judge Hill's opinion in *Esplin* has been widely cited in not only justification but encouragement of class action treatment in appropriate cases and continues to represent the considered views of this court. But its doctrine should not be extended to limit unreasonably the sound discretion of trial courts in cases such as this, where discretion may be the key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure.[22] One of the reasons expressed in that case for a liberal application of the Rule was the retained power of the trial court later to establish sub-classes or even to abrogate the class status should developments indicate; here, developments were not likely to change the situation and the overriding considerations which would justify if not require a changed view had class action treatment been undertaken were before the trial court at the threshold.

Appellants also say that the trial court failed, contrary to the teachings of *Esplin*, to weigh the four non-exhaustive factors listed in subdivision (b)(3)(A), (B), (C), and (D), of Rule 23.[23] The trial judge did in fact refer to these in his memorandum decision and there is nothing to indicate that he did not give proper appraisal to all of the pertinent factors enumerated by the

---

22. "In final analysis, resolution of the question now presented reverts to the 'fair and efficient adjudication' problem. The trial judge will have to face this problem in a realistic way. He should be afforded the greatest latitude in the exercise of his judgment after a careful factual exploration as to how this result can be attained." City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295, 300 (2d Cir. 1969).

23. "In arriving at these determinations the court is directed to weigh four non-exhaustive factors: the interest of the class members in individually controlling separate suits, the extent and nature of litigation already pending, the desirability of concentrating litigation in a particular forum, and the difficulties likely to be encountered in managing a class action." Esplin v. Hirschi, 402 F.2d 94, 98 n. 7 (10th Cir. 1968), *supra*. See also Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), cited in *Esplin*, wherein it is stated that " . . . the dismissal *in limine* of a particular proceeding as not a proper class action is justified only by a clear showing to that effect and after a proper appraisal of all the factors enumerated on the face of the rule itself."

Rule. He expressly approved the reasoning of Judge Frankel in *Ratner* which in turn had specifically quoted the subdivisions referred to as among the premises of his conclusions that the class action device was not shown as a superior one in that Truth in Lending case. The Rule requires the court as the basis for approving a class action to find that common questions of fact predominate and that a class action is superior, and the matters following this requirement are of course to be considered in the latter connection. But as *Esplin* points out, they are non-exhaustive. Nothing that we have said requires the inclusion by rote in findings or otherwise of the detailed subject matters of these non-exhaustive considerations in either granting or denying class action treatment so long as they do not on the record negate the basic finding of the trial court, which is not the case here.

■ There is less reason for appellants' attack upon the sufficiency of the form of the trial court's findings for not expressly covering the question of whether common questions of fact or law predominated. Appellants say that "the authorities on federal procedure" hold that the court must make two findings, the first of which is whether questions of law or fact are common and predominate over individual ones, and

that "[a]s the district court must rule on both requirements of (b)(3) . . . the absence of a consideration . . . whether questions of law or fact common to the class predominate over individual ones is clearly a further abuse of the trial court's discretion." We cannot agree. In denying class action status it was sufficient for the trial court to determine on an adequate record and for good reasons stated that the procedure was not superior to other procedures irrespective of whether the common issues of fact or law were predominant.[24]

■■ Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (W.D.Pa.1971), *supra*, is relied upon by appellants as primary support for its position that in the circumstances of this case the trial court was obliged to approve class action proceedings. We agree, as there held, that a plaintiff's burden of satisfying the prerequisite of the rule for the maintenance of the class action does not involve convincing demonstration of the merits of his underlying cause of action.[25] But we cannot agree that the trial court in ruling upon whether a class action should be maintained must close its eyes to possible consequences as they relate to the superiority or inferiority of such procedure in terms of fairness and efficiency.[26] We are not called

24. Judge O'Connor noted that Rule 23(b)(3) requires findings both on the predominance of common questions of law or fact, and on the superiority of a class action as a method of adjudicating the controversy. However, he elected only to "consider whether a class action is 'superior to' other available methods, because that issue appears to be dispositive of the case." Supporting this view that the required finding of superiority or inferiority is dispositive is the case of Dolgow v. Anderson, 43 F.R.D. 472, 488 (E.D.N.Y.1968), wherein Judge Weinstein declared: "Once the court has decided that a class action is superior to other available procedural devices, the crucial prerequisite for the maintenance of a class action under subdivision (b)(3) is the requirement that there be 'questions of law or fact common to the members of the class' and that such questions

must 'predominate over any questions affecting only individual members.'"

25. Of course more than a frivolous or insubstantial claim must be indicated and a motion for summary judgment or to dismiss on the pleadings is available to test the merits of the claim. See Duhart v. Carlson, 469 F.2d 471 (10th Cir. 1972).

26. In agreement with this view Wright reflects that "the rule does not indicate the weight to be given to each factor or require that the action be dismissed if particular conclusions are reached as to any or all of them. Clearly, no single element is determinative. The enumeration simply provides some guidelines to assist a judge in deciding whether a class action best serves the interests of the litigants and the court. When applying these factors, the judge should reflect on the wisdom of allowing the action

upon to say that *Katz* necessarily was in error in determining in the exercise of the trial court's discretion at least for the time being that a class action was maintainable. But even in that case it is obvious that the court justifiably entertained substantial reservations. See 53 F.R.D. 539, 544 n. 11. It is to be hoped that the sequel of that decision will prove both fair and efficient. But at least until better established its pattern should not be indiscriminately thrust upon trial judges who entertain different views for sufficient reasons within their own discretion. Nor do we find convincing another case emphasized by appellants because the opinion was written by an assigned Circuit Judge, LaMar v. H & B Novelty & Loan Company, 55 F.R.D. 22 (D.Ore.1972). Except for citation of *Katz* on another point the decision does not take notice of the special problems in Truth in Lending cases.

■ Appellants have cited Fujishima v. Board of Education, 460 F.2d 1355 (7th Cir. 1972), in support of their contention that the court may not deny class status because there is no "need" for it if the prerequisites and conditions of the Federal Rules are met. The interpretation of that case, which involved subdivision (b)(2) of the Rule, is an oversimplification as applied to (b)(3) cases such as this. Within the criteria of the Rule, the "need" for class action treatment in a sense may be considered a vital, if not determinative, consideration as need inevitably relates to the problems of superiority, fairness and efficiency. These latter considerations may not be applied mechanically without a consideration of relative needs or necessities.

Reasons can be assigned but they often light up unexpressed counter reasons. To find the existence of reasons within the Rule is often indeterminate for still the Rule requires the weighing of one reason against another or against consideration of common sense and practicality. Many of the reasons assigned for the granting or denial of class action status are quite ambivalent and hardly sufficient one way or another in and of themselves: Appellants say that the enormity of the class dictates class action treatment; appellee responds that its very size militates against such a treatment. Appellee argues that because of the shocking exposure to annihilating liability the class action device here should not be utilized to seal such a doom; appellants that if there is such grave liability, congressional policy would be impermissibly frustrated if it were not enforced in the most effective and comprehensive fashion. Appellants assert that the lower court considered policy beyond the scope and authorization of the Rule; appellee that the Rule itself has explicit in it the policy of denying class action treatment when it would not be "superior to other available methods for the fair and efficient adjudication of the controversy". And it could be added that while provision in the Act for the award of attorney's fees as well as costs furnishes encouragement and practicality for individual actions, the cumulative consequence might be more horrendous to a defendant in view of this should all cardholders proceed and succeed individually than if they combined in a class action entailing a single fee.

■ These points and counterpoints serve only to emphasize the perplexity of

to be maintained as a class suit." Citing Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 459 (E.D.Pa. 1968), Prof. Wright includes in his treatise the suggestion that proposed class actions be evaluated in terms of the strain on courts required to process large numbers of claims, the importance of making known in advance those who will be bound by the judgment, avoiding solicitation of claims, avoiding modification of the applicable period of limitation, and advancing, or at least not prejudicing, recognized goals of public policy. 7A Wright & Miller, Federal Practice and Procedure § 1780, pp. 64–65.

our problem; they do not solve it. There may be no wholly satisfactory solution but we believe an acceptable one can be found in the present context by sustaining the authority of the trial court to employ realism and good sense in denying class action status.

■ We are of the opinion that it was within the sound discretion of the court below to avoid results thus appearing procedurally unnecessary and overwhelming. The exercise of such discretion related not only to the appellee [27] but to the Rule itself, which bears the seeds of its own destruction through unrealistic applications within its theoretical span.[28]

The fairness to be taken into consideration in arriving at a decision of course is procedural fairness. No one has suggested that with reference to the substantive rights of individual debtors there should not be full recognition. To approve a class action and then to cut down or dilute the right of recovery for the members of the class before the court to avoid their burdensome accumulation would involve substance. To leave debtors to their individual remedies rather than to invoke the class action procedure involves the question of procedural fairness which the Rule entrusts to the sound discretion of the trial judge.[29] Within that discretion, we believe, is the attaching of determinative weight to the reality that if class action

treatment were applied in this case where the complaint contains no indication of any actual damages in substantial or provable amount, this aggregated relief would be oppressive in consequence and difficult to justify. We do not consider it untenable to reject a single and unvarying answer to the problem in favor of this less rigid one. That the present emphasis upon discretion could lead to inconsistent results, and indeed has among the courts, is no insurmountable objection; the practicality of interpretation has furnished helpful testing ground through varying ideas of judges in many other contexts and this same type of testing can most profitably proceed in this area until, if ever, some more acceptable and general solution by amendments to the Rules or clarification by statute emerges. No such preferable solution within the power of a reviewing court occurs to us or has been called to our attention. Class action treatment in the context and under the circumstances now before us is not mandated. A decision one way or another is not so decisive of the right of recovery as to make it incumbent upon this court to insist here that those who have not chosen to proceed individually must be given the opportunity to proceed as members of a class.

Yet we cannot agree that under all circumstances the class action device necessarily would be incompatible with

**27.** "Students of the Rule have been led generally to recognize that its broad and open-ended terms call for 'the exercise of some considerable discretion of a pragmatic nature. Appealing to that kind of judgment, defendant points out that (1) the incentive of classaction benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive." Ratner v. Chem-

ical Bank New York Trust Company, 54 F.R.D. 412, 416 (S.D.N.Y.1972).

**28.** "Finally the amended rule is in jeopardy from those who embrace it too enthusiastically just as it is from those who approach it with distaste." C. Wright, Law of Federal Courts, § 72, p. 307.

**29.** The Advisory Committee in notes accompanying the Amended Rule states: "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." 39 F.R.D. 69, 102–103

Truth in Lending cases.[30] Where overriding reasons for preclusion are not present, there seems no reason why the use of this procedural device may not be appropriate and desirable within the sound discretion of the trial courts. Creditors disregarding their responsibilities under the Act and causing damages to members of a class however limited or extensive should have no assurance that their accumulated responsibility cannot be enforced through this means. In such event a finding by the trial court to this effect may be entitled to the same respectful consideration we have found the decision of Judge O'Connor warrants. It is conceivable that there may be cases of this nature where the class action procedure is so manifestly superior or inferior that an appellate court on review would be warranted in reversing the trial court's determination to the contrary. We have no such problem before us. There may be some who understandably will feel uncomfortable with what might be regarded as excessive power on the part of trial courts to make such decisions with the persuasive effect here recognized.[31] Indeed it might be comforting to all of us in a way if each decision on review could clatter out of a slot brightly and clearly minted whenever governing symbols seemed to match, without the necessity of pondering over more imponderable but significant indications. Yet our whole system of justice is importantly geared to the balancing of judgment across variant and numerous circumstances by judges who must be entrusted from the very difficulties of remote comparison and the superior perception of firsthand impression to a wide discretion. The discretion of the court below was not abused.

The results reached here are consistent both with the provisions of the Truth in Lending Act and Rule 23. Any other view might be inimical to both. Moreover, there seems no reasonable alternative. We cannot accept the alternative of mechanically or generally applying class treatment to these cases. If it were supposed that the only remedy would be submission of the matter to the Advisory Committee on Rules of Civil Procedure in hope of clarification there appears little that could be done by it but to recommend the express exemption of Truth in Lending cases from class action treatment, or class action treatment in all such cases,[32] or that trial courts be permitted in the exercise of sound discretion to determine within broad and open-ended guidelines whether that means is superior to other available methods for the fair and efficient adjudication of the controversy on a case by case basis. And the latter seemingly most sensible alternative would bring us full circle back to the present rule which, however it may be criticized otherwise, seems most practical in this respect.

Indeed the Rule generally may be at the crossroads, many knowledgeable lawyers and some judges maintaining that it should be completely scrapped; others that it should be substantially revised or reformed; and still others that it should be even more liberally administered to effectuate or promote societal objectives bearing little relationship to economics

30. *Cf.* Sims v. Parke Davis & Co., 334 F.Supp. 774 (E.D.Mich.), aff'd 453 F. 2d 1259 (6th Cir. 1971), cert. denied, 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed. 2d 254 (1972), holding that a class action under Rule 23 cannot be brought for violations of the Fair Labor Standards Act because 29 U.S.C. § 216(b) limits the binding effect of judgments to those who have filed written consent to become parties to the suit. See also Maguire v. Trans World Airlines, Inc., 55 F.R.D. 48 (S.D.N.Y.1972).

31. See Statement of Black, J., dissenting from U.S. Supreme Court's Order of Feb. 28, 1966, adopting the present version of Fed.R.Civ.P. 23, 383 U.S. 1031, 1035–1037 (1966).

32. Thereby either absolutely precluding a type of enforcement which Congress did not see fit to preclude, or indiscriminately requiring it, when Congress in passing the Act had refrained from so doing.

or practicality. We believe that the solution may well be to continue straight ahead for a time under the present Rule, but to smooth out to a degree the formal obstacles that may be unduly obstructing trial courts on the firing line in realistic and practical applications within their sound discretion and in view of superior opportunity to observe the battle conditions case by case. It would be worse in the long run to maim or kill the Rule with universal but improvident kindness than to limit on a case by case basis within sound judicial discretion its application to situations offering sensible results.

Hence we conclude that the action of the trial court in denying the motion for maintenance of the suit as a class action was within its sound discretion and should not be disturbed.

Affirmed.