**Margaret BEARD, etc.**

v.

**KING APPLIANCE CO. et al.**

**Civ. A. No. 87-73-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 27, 1973.

**436**

Daniel T. Balfour, Maloney & Yeatts, Richmond, Va., for plaintiff.

James M. Minor Jr., Minor, Thompson, Savage, Smithers & Bendetti, Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Margaret Beard, has brought suit on her own behalf and as representative of an alleged class, seeking damages from defendants for alleged violations of the Truth In Lending Act (Act) and Regulation 7 thereunder, 15 U.S.C. § 1601 et seq., 12 C.F.R. § 226. Jurisdiction is attained pursuant to § 130(e) of the Act, 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. The parties are presently before the Court on plaintiff's motion that this be declared a proper class action. Counsel for the respective parties have submitted memoranda on the issue and the question is now ready for disposition.

Plaintiffs seek class recognition pursuant to Rule 23(b)(3), Fed.R.Civ.P. That section and Rule 23(a) set forth the criteria for such an action as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants offer a number of objections to the maintenance of such a class action in the instant circumstances.

With regard to the requirements of 23(a), both sides appear to agree that the currently estimated 1726 members of the class are too numerous to permit joinder. The Court is further satisfied that there are common questions of law and fact averred and that the defenses may reasonably be anticipated to be similar.

Defendants argue, however, that the named plaintiff cannot "fairly and

adequately protect the interests of the class" due to her acknowledged inability to bear any of the costs of providing notice to class members. Defendants argue that they have no presently operating mechanism, such as regular billing, by which they could conveniently carry out notice requirements, and that the placing of the burden of notice entirely upon them would be both unjust and largely unprecedented. However, Professor Wright has pointed out: "It is not yet settled—and indeed it may be there should not be one single rule—whether notice is to come from the court, from the representatives of the class, or perhaps even from the party opposing the class." Wright, "Class Actions," 47 F.R.D. 169. Rule 23(c) does not state that the plaintiff shall give notice, but that the court "shall direct" notice to the members of the class. Thus wide discretion resides in the court. While an argument that such notice is part of the prosecution of a class action and as such falls on the shoulders of the class representative is easily understood, if such a burden cannot be so borne, proper circumstances may warrant a shift of this burden to the defendant. In Dolgow v. Anderson, 43 F.R.D. 472 (D.C.N.Y.1968), for example, the Court pointed out both the fact that a class action is not without benefit to the defendant, in that if he were to prevail he would have a judgment with *res judicata* effects against the class, and the practical impetus toward assigning burdens where they can be borne. In the instant case the proposed class is composed of something under 1750 members. The costs of notice to a class of this size will be relatively small. In sum, while notice problems exist, they are not insurmountable, and they do not, standing alone, warrant denial of class status at this time.

Indeed, a perfunctory examination of the purported contract in issue, designated "Exhibit A" filed with the complaint, if in fact a true and accurate copy of the installment sales contract evidencing the transaction between plaintiff and defendant, and if generally similar to the contract form used by defendants in dealing with members of the alleged class, gives rise to a reasonable conclusion that the alleged class is more than likely to prevail.

Should the factual inadequacies heretofore referred to be resolved in plaintiff's favor, by way of a pre-trial conference, request for admissions, or other appropriate manner, the Court, concluding that plaintiff class had shown a strong likelihood of prevailing, would not hesitate to direct that the initial cost of the notice be borne by the defendants. See Lewis v. Bogin, 337 F. Supp. 331 (D.C.N.Y.1972); Ostapowicz v. Johnson Bronze Co., 54 F.R.D. 465 (D.C.Pa.1972).

In any event, the difficulties attending the nature and initial assessment of cost of such notice as may be appropriate is not in this instance insurmountable.

While the requirements of Rule 23(a) may be and are met, plaintiff still must meet the requirements of 23(b)(3), and it is here that defendants make their principal attack. Initially plaintiffs must show that the questions of law or fact common to the members of the class not only exist but "predominate over any questions affecting only individual members." Plaintiffs allege that defendants violated the Act in the following respects:

(a) By failing to disclose the amount of finance charge as required by Section 128(A)(6) [128(a)(6)] of the Act, 15 U.S.C.A., Section 1638(a)(6), and Section 226.8(c)(8)(i) of Regulation Z;

(b) By failing to disclose the finance charge as an accurate annual percentage rate computed in accordance with the provisions of Section 107(a)(1) of the Act 15 U.S.C.A., Section

1606(a)(1), and Section 226.5(b) of Regulation Z.

(c) By failing to disclose the "unpaid balance of cash price," "amount financed," or "deferred payment price" by that precise terminology required by Section 128(a)(1)–(10) of the Act, 15 U.S.C.A., Section 1638(a)(1)–(10), and Section 226.8(c)(1)–(8) of Regulation Z.

(d) By failing to disclose the "total of payments" scheduled to repay the indebtedness in the precise terminology required by Section 128(a)(2)(1)– (10) [128(a)(1)–(10)] of the Act, 15 U.S.C.A., Section 1638(a)(1)–(10), and Section 226.8(b)(3) of Regulation Z.

(e) By failing to identify the method to be used in computing the unearned portion of the finance charge in the event of pre-payment of the obligation as required by Regulation Z Section 226.8(b)(7); and,

(f) By failing to identify the creditor of the installment sales contract as required by Regulation Z, Section 226.-8(a).

Although defendants deny the substance of all of these allegations, no argument of insufficient predominance of commonality is raised as to (a), (c), (d), and (e). With regard to (f), defendants argue that failure to identify the creditor could not be determined from the face of the contract form itself, and that to determine the applicability of relief on this claim the Court would be required to examine each of the over 1700 contracts. It is not clear why the Court could not, from the face of the form contract, determine whether that form sufficiently lent itself to the revelation of the intended creditor and, upon relatively cursory inspection, whether such disclosure was made. The Court does not find that class status could be denied on the grounds of claim (f)'s alleged insufficient commonality prior to a greater showing of the claim's problematic implications than has thus far been made. In any event, even should it come to pass that the Court would be required to examine each form, such a task would be neither herculean, inhibiting, nor for that matter, in light of past and pending litigation in this Court, unique. At the very least, the Court would be benefitted by the assistance of able and industrious counsel.

■ Defendants make a similar claim with regard to claim (b). They argue that an annual percentage rate was disclosed on their form contracts, and that the question raised, whether that percentage rate was accurate in each instance, will require this Court to make calculations based on the figures actually involved in each class member's purchase. The Court tends to agree that the particularized and personalized nature of this particular claim does not suggest, absent a showing of a pattern of conduct, a question sufficiently "common" to the class. Richmond v. Railey's Appliance Centers, 59 F.R.D. 641 (E.D. Va.1973). Thus class status would not be appropriate with regard to this one claim. Nonetheless, five claims remain which appear to meet the requirements of Rule 23(a).

■ Defendants also argue that since Ms. Beard has not claimed actual damages on behalf of other members of the class, any class member seeking such damages will have to do so in a second proceeding obviating much of the efficiency allegedly produced by the proposed class action. The Court notes that actual damages in the truth in lending situation are often speculative and particularly difficult to prove. A reluctance to bring suit for such damages might well inhere in such circumstances. Furthermore, as defendants themselves have pointed out, only three persons, including the present plaintiff, have expressed interest in enforcing their alleged rights against the defendants even when a successful action would carry $100.00 minimum recovery. The Court finds that the possibility of subsequent

individual suits for actual damages in addition does not substantially detract from the predominance of class issues or the viability of the class action as brought on the remaining claims.

Plaintiff, having come this far, must overcome one final hurdle: the Court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) suggests "pertinent" considerations in making this determination. These include the nature of litigation already commenced by members of the class, the desirability of concentrating the litigation of the class claims in a particular forum, and the difficulties in the management of the class. The Court finds them all resolvable in favor of class status.[1] Defendants, however, present an additional factor for consideration under this heading. Their argument runs essentially as follows: The Truth in Lending Act, in seeking to produce "a species of 'private attorney general'" to enforce its provisions, provided to those consumers under its protection an action against an allegedly violating creditor in which a minimum recovery of $100.00 plus reasonable attorney's fees and costs would be awarded if suit were successful. Thus the appropriate remedy under the Act is the individual suit envisioned by Congress, and a class action is not "superior" to the fulfillment of that vision. Defendants go on to argue that a class action is not "superior" if it will produce "undesirable" results which may be otherwise avoided. See Advisory Committee's Notes on the Proposed Rules of Civil Procedure, 39 F.R.D. 69, 102–103. The "undesirable result" about which defendants are presently concerned is a potential "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or benefit to the defendant" visited on the defend-

ants due to the minimum damage provision of the Act. See Ratner v. Chemical Bank, 54 F.R.D. 412 (S.D.N.Y.1972). The minimum damages in the present action would be $172,600.00, excluding attorney's fees and costs. While firm data is not presently before the Court, the Court will accept for the moment defendants' representation that they are a small furniture business which could easily be rendered insolvent by such a judgment. Furthermore, defendants assert that a new form contract has been in use since January of 1973, well prior to initiation of this suit. Thus, they say, the constructive purposes of the Act have already been accomplished.

Ratner, supra, is the seminal case in which class status was denied on the basis aforementioned, and one from which defendants seek support. Undoubtedly Ratner has had some precedential effect. See Wilcox v. Commerce Bank of Kansas City (10 Cir.), 474 F.2d 336, at note 13. Nevertheless despite defendants' assertion of what they purport to be the "majority rule," precedential guidance, particularly from Courts of Appeals, has not yet really developed. Furthermore, this Court cannot say that the threat of potential class action liability is not an important encouragement to voluntary compliance with the Act. See Board of Governors of the Federal Reserve System, Annual Report to Congress on Truth-In-Lending for the year 1972 (January 3, 1973). Nor does the Court feel that the present use of a new contract can in any way negate the rights of persons previously misled.

With regard to the size of the potential judgment, the Court notes that "while provision in the Act for the award of attorney's fees as well as costs furnishes encouragement and practicality for individual actions, the cumulative consequence might be more horrendous

1. The fourth criteria, the interest of class members in individually controlling separate actions, has been addressed in the discussion of "commonality" *supra* and is not an inhibiting factor for plaintiff.

to a defendant in view of this should all [plaintiffs] proceed and succeed individually than if they combined in a class action entailing a single fee." Wilcox v. Commerce Bank of Kansas City, *supra*, 346 (10th Cir. 1973). Thus, defendants must in fact be contending not only that a single class recovery is inappropriate, but that total potential liability under the Act was Congressionally intended to be discounted by an amount reflective of those persons who, while fully entitled to relief, would not or could not make use of the Act's individual enforcement provisions.

The legislative history of the Act sheds no light on this issue, one way or the other. As Judge Christenson has pointed out, "To find any congressional intent to preclude at all events treatment of [Truth In Lending] cases under Rule 23 would be a work of clairvoyance and not of construction or interpretation." See Wilcox v. Commerce Bank of Kansas City, *supra*, at 343, 344. However, were defendants' thesis to be indulged, it would, in the nature of things, be those potential plaintiffs most lacking in wealth and education who would not recover under the Act and thereby produce the "intended" discount. This Court would need firmer support than has thus far been advanced before adopting such a reading of legislative intent.

While the potential harm to the plaintiff class in a case such as this may not seem to some to warrant the harsh result predicted by defendants, that is, absent due process limitations, a legislative or political, and not a judicial, determination.

For the reasons stated above, the Court finds that plaintiff has made an adequate showing of the propriety of a class action, and her motion for a declaration of a proper class action will be granted.

An appropriate order shall issue.