**Veronica AGOSTINE, on behalf of herself and all others similarly situated**

**v.**

**SIDCON CORPORATION and Domestic Consumer Discount Company.**

**Civ. A. No. 74–3157.**

United States District Court, E. D. Pennsylvania.

Dec. 5, 1975.

**440**

Henry J. Sommer, Philadelphia, Pa., for plaintiff.

William E. Taylor, III, Theodore W. Flowers, Philadelphia, Pa., for defendants.

OPINION

BECHTLE, District Judge.

This action involves alleged violations of the Truth in Lending Act ("Act"), 15 U.S.C. §§ 1601–1681t, and Regulation Z, 12 C.F.R. § 226 *et seq.* (1974),[1] concerning certain transactions whereby defendants attempted to collect the balance due on an original loan. Presently before the Court are plaintiff's motion to dismiss defendant's counterclaims and motion for class action certification.

On July 13, 1970, plaintiff obtained a loan of $3,191.49 from Domestic Consumer Discount Company ("Domestic") and simultaneously executed an installment note. Under the terms of the note, plaintiff was to repay the loan in monthly installments of $102.41. Shortly thereafter, plaintiff defaulted on the note by failing to pay as the installments became due. In October of 1973, Domestic referred plaintiff's account to defendant Sidcon Corporation ("Sidcon") for collection. Sidcon requested from plaintiff the full amount due under the loan. Negotiations followed which, in January, 1974, resulted in an agreement whereby plaintiff was to repay the original loan in installments of $25.00 per week and an initial payment of $100.00. After the initial $100.00 payment was made, plaintiff failed to make any further payments.

In May of 1974, Domestic contacted plaintiff and informed her that it would handle her account directly. A new agreement was entered into requiring plaintiff to pay the original remaining debt in monthly installments of $55.00 per month. As of December 13, 1974,

---

1. Regulation Z was promulgated by the Federal Reserve Board as authorized by 15 U.S.C. § 1604. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

the date of the complaint, plaintiff had continued to make the $55.00 monthly payments.

Plaintiff then commenced this action alleging that the defendants, in connection with the January, 1974, and May, 1974, agreements, had not given her proper disclosures, as required by the Act and Regulation Z.[2] The class which plaintiff seeks to represent would consist of all persons in the Eastern District of Pennsylvania: (1) who have entered into consumer credit transactions with defendants or others, or have had their payments accelerated upon default by defendants or others; (2) who have subsequently agreed to repay the accelerated debt under a modified payment schedule, which contains a finance charge or is payable in more than four installments; and (3) who have not been given the disclosures required by the Act and Regulation Z. Plaintiff is asking for damages, attorney's fees, and court costs for herself and for other class members in accordance with 15 U.S.C.A. § 1640(a)(3), *as amended* (Supp. I 1975).

■ In its answer to the complaint, Domestic sets forth two allegedly compulsory counterclaims pursuant to Rule 13(a) of the Federal Rules of Civil Procedure. The first is against plaintiff for all sums expended in connection with attempts to collect under the original July 13, 1970, loan agreement, including collection fees, court costs and applicable interest. The second, alternatively and in the event a class action is certified, is against all class members who have defaulted for the full amount of the defaulted payment, for interest and/or payment penalty, and for counsel fees. Plaintiff contends that the counterclaims alleged are state law claims, over which this Court has ancillary jurisdiction only if they are compulsory counterclaims under Rule 13(a). *See Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); 6 *Wright & Miller, Federal Practice and Procedure: Civil* § 1414 n.55 (1971). If the counterclaims are permissive under Rule 13(b), then there is no federal jurisdiction over them unless they can be supported by separate and independent jurisdictional grounds. *United States v. Heyward-Robinson Company,* 430 F.2d 1077, 1080 (2d Cir. 1970).

■ A counterclaim is said to be compulsory when "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Most courts have not attempted to define the phrase "transaction or occurrence," but have suggested standards by which the compulsory or permissive nature of counterclaims can be determined: (1) Are the issues of fact and law raised by the claim and

---

2. Specifically, plaintiff claims that the defendants failed to disclose the following: the amount of the finance charge, *see* 15 U.S.C. § 1639(a)(4); 12 C.F.R. § 226.8(d)(3); the annual rate of the finance charge, *see* 15 U.S.C. § 1639(a)(5); 12 C.F.R. § 26.8(b)(2); the amount of credit extended, including all charges individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, *see* 15 U.S.C. § 1639(a)(1); 12 C.F.R. § 226.8(d)(1); the "total of payments" scheduled to repay the indebtedness, *see* 12 C.F.R. § 226.8(b)(3); the number, amount and due dates or periods of repayments scheduled to repay the indebtedness, *see* 15 U.S.C. § 1639(a)(6); 12 C.F.R. § 226.8(b)(3). Plaintiff further claims that

defendants failed to make all of the disclosures required by the Act before the transaction was consummated, *see* 12 C.F.R. § 226.8(a); failed to furnish plaintiff with a copy of an instrument or statement containing the required disclosures, *see* 12 C.F.R. § 226.8(a); failed to identify the method for computing the unearned finance portion of the finance charge in the event of prepayment of the obligation, *see* 12 C.F.R. § 226.8(b)(7); failed to disclose the amount or method to be used in computing default or delinquency charges payable in the event of a late installment payment, *see* 15 U.S.C. § 1639(a)(7); 12 C.F.R. § 226.8(b)(4); and failed to disclose the date on which the finance charge begins to accrue, *see* 12 C.F.R. § 226.8(b)(1).

counterclaim largely the same? (2) Would *res judicata* bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute both plaintiff's claim and defendant's counterclaim? (4) Is there any logical relation between the claim and the counterclaim? *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198–1199 (10th Cir. 1974); *Great Lakes Rubber Corporation v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961); *Wright & Miller, supra,* § 1410 at 42 and cases cited therein. With these standards in mind, we turn to the facts as presented.

█ It is obvious that the issues of fact and law are quite different. Plaintiff's claims, based upon the Truth in Lending Act, will require a determination of whether a consumer credit transaction took place without the requisite disclosures, while Domestic's counterclaims seek to recover default payments on the outstanding debt obligations. *Res judicata* would not bar Domestic from asserting its counterclaims against the named plaintiff or other class members in a later state court suit, because by this Court's holding them to be permissive, the counterclaims cannot be barred. The evidence in support of plaintiff's claim would be geared to the statutory requirements of the Act. Domestic, in order to support its counterclaims, would be required to set forth the underlying debt obligation and proof of a default, while plaintiff and members of the class could assert numerous possible defenses, such as fraud, modification and unconscionability.

Even under the "logical relation" test, which is the most widely used by the courts, Domestic's counterclaims cannot

be said to be compulsory under Rule 13(a). *Great Lakes Rubber Corporation v. Herbert Cooper Co., supra,* 286 F.2d at 634; *Wright & Miller, supra,* § 1410 at 48. The two claims are distinct in nature; one involves a federal statute, while the other consists of state contract claims. Domestic vigorously contends that a finding by this Court that it has violated the Act will enable plaintiff, in a subsequent state court suit, to assert the violation as an absolute defense, rendering Domestic incapable of collecting for default payments and for expenses incurred. Domestic does not cite any authority holding that a Truth in Lending violation can void an underlying debt obligation. 15 U.S.C.A. § 1640, *as amended* (Supp. I 1975), sets out with specificity the damages which are available if there is a violation of the Act. To accept Domestic's theory would be to set plaintiff's damages at the entire amount of the debt, thus granting more relief than was provided for by Congress. This Court will not follow such a course.

██ Moreover, the purpose of the Act is to assure a meaningful disclosure of credit terms so that consumers will be able to readily compare various credit terms available to them and avoid uninformed use of credit. *See* 15 U.S.C. § 1601; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–366, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). To allow Domestic's counterclaims would effectively frustrate such a purpose, by involving this Court in a myriad of factual and legal questions that are logically unrelated to the alleged Truth in Lending violations. As the court stated in *Roberts v. National School of Radio & Television Broadcasting*, 374 F.Supp. 1266, 1271 (N.D.Ga.1974):[3]

---

3. The *Roberts* case is the only reported decision to have this issue presented before it. That court held counterclaims, similar to the ones asserted in this case, to be permissive and dismissed them. 374 F.Supp. at 1271. The cases which Domestic cites in support

of its position did not involve a motion to dismiss a counterclaim, and any reference to the compulsory nature of such claims can best be described as an "afterthought." *Turoff v. Union Oil Company of California,* 61 F.R.D. 51, 59 (N.D.Ohio 1973); *Berk-*

Given the remedial nature of TIL and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of the target of the very legislation under which a TIL plaintiff states a cause of action.

Accordingly, plaintiff's motion to dismiss Domestic's counterclaims will be granted.[4]

Before addressing plaintiff's motion for class action certification, the Court must deal with the recent amendment to the damages provision of the Act. 15 U.S.C.A. § 1640(a), *as amended* (Supp. I 1975),[5] provides as follows:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —

(1) any actual damage sustained by such person as a result of the failure;

(2) (A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by

*man v. Sinclair Oil Corporation*, 59 F.R.D. 602, 609 (N.D.Ill.1973); *Alpert v. U. S. Industries, Inc.*, 59 F.R.D. 491, 499–500 (C.D. Cal.1973); *Rodriguez v. Family Publications Service, Inc.*, 57 F.R.D. 189, 193 (C.D.Cal. 1972). At argument on the motion to dismiss the counterclaim, Domestic stated that certain language by Judge Gibbons in *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 758 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), is "strong" dicta in support of its position. After a careful reading of the passage, it appears to this Court that Judge Gibbons was merely pointing out Carte Blanche's objections to class action treatment, one of them being that it might, in the future, have to assert "compulsory" counterclaims for delinquent credit card payments. The characterization of the counterclaims as compulsory was made by Carte Blanche and not by the court.

4. Since this Court is dismissing Domestic's counterclaims for the reasons stated above, we need not address plaintiff's contentions that the counterclaims failed to state a cause of action upon which relief could be granted, and that no counterclaims may be asserted against unspecified absent class members because they are not "parties" for the purpose of Rule 13 of the Federal Rules of Civil Procedure. For a discussion of the latter, *see Donson Stores, Inc. v. American Bakeries Company*, 58 F.R.D. 485, 488–490 (S.D.N.Y.1973).

5. Prior to the amendment, 15 U.S.C. § 1640(a) provided as follows:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

The amendment represents a legislative response to those judicial decisions denying class action certification in Truth in Lending cases. *See, e. g., Katz v. Carte Blanche Corporation,* 496 F.2d 747, 763 n.9 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 340–341 n.13 (10th Cir. 1973). At the same time, it places an aggregate limitation of the lesser of $100,000 or 1 per centum of a creditor's net worth on a creditor's class action liability, not involving actual damages,[6] thus avoiding the "annihilating punishment" that could be caused by a damage award of at least $100 per class member. *See, e. g., Ratner v. Chemical Bank New York Trust Company,* 54 F.R.D. 412, 416 (S.D.N.Y.1972).

■ Prior to the amendment, three circuits had determined that the class action device could be utilized in Truth in Lending cases, even though the legislative history was silent on the issue. *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974); *Katz v. Carte Blanche Corporation, supra; Wilcox v. Commerce Bank of Kansas City, supra.* The amended Act now, within stated limitations, expressly contemplates class actions. Plaintiff contends that, by enacting the amendment, Congress intended that the class action device should almost always be utilized in Truth in Lending cases. We do not agree. After a careful examination of the relevant legislative history, it is apparent that Congress did not intend that there should be a class action in most cases, but intended to encourage Truth in Lending class actions only in the sense of removing the minimum liability provision which had prevented a majority of courts from certifying these Truth in Lending cases as class actions. Therefore, we will apply Rule 23 to the facts in this case just as it is applied generally, keeping in mind the specific limitations that are contained in the amendment. *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114, 117 (5th Cir. 1975); *Postow v. Oriental Building Association,* 390 F.Supp. 1130, 1140 (D.D.C.1975).

■ A suit may be maintained as a class action if it appears that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of both law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to satisfying the requirements of Rule 23(a), a court must find that questions of both law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

■ Although the exact size of the proposed class in the instant case is not known at this time, discovery indicates that the class will number in the

---

**6.** It appears that the aggregate limitation would not apply if actual damages could be proven. S.Rep.No.279, 93d Cong., 1st Sess. 15 (1973), U.S.Code Cong. & Admin.News, p. 1664; *Postow v. Oriental Building Association,* 390 F.Supp. 1130, 1140 (D.D.C. 1975). Such a construction of the amendment would not reinstate the very problem which the amendment sought to rectify, as it is very difficult in Truth in Lending cases to prove actual damages. *See Beard v. King Appliance Co.,* 61 F.R.D. 434, 438 (E.D.Va. 1973); Note, *Recent Developments in Truth in Lending Class Actions and Proposed Alternatives,* 27 Stan.L.Rev. 101, 110–117 (1974) [*Recent Developments*]; Note, *Class Actions Under the Truth in Lending Act,* 83 Yale L.J. 1410, 1427 & n. 120 (1974).

hundreds.[7] Therefore, the class is so numerous that joinder of all members is impracticable.

■ It is also clear that there are questions of law and fact common to the class. The factual question is whether defendants gave written disclosures prior to entering into modified payment schedules with the members of the class. The legal question, given the absence of written disclosures, is whether disclosures were required to be given pursuant to the Act and Regulation Z.

■ Plaintiff's claims are typical of those of the proposed class. That is, given a default and subsequent modified payment schedule, payable in more than four installments or with a finance charge, are the members of the class entitled to the disclosures required by the Act and Regulation Z? In addition, there has been no showing that plaintiff has any interests that are antagonistic to the members of the class. Thus, the standards of Rule 23(a)(3) have been met. *Cutner v. Fried*, 373 F.Supp. 4, 13 (S.D.N.Y.1974); *In re Penn Central Securities Litigation*, 62 F.R.D. 181, 189 (E.D.Pa.1974); *Mersay v. First Republic Corporation of America*, 43 F.R.D. 465, 468–469 (S.D.N.Y.1968).

■ The traditional criteria by which to assess the adequacy of plaintiff's representation are: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests that are antagonistic to those of the class. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Manning v. Princeton Consumer Discount Company, Inc.*, 390 F.Supp. 320, 324 (E.D.Pa.1975); *Dolgow v. Anderson*, 43 F.R.D. 472, 494 (E.D.N.Y.

1968). As stated above, plaintiff's interests are coextensive with those of the class. The Court also finds that plaintiff's counsel is experienced in litigation similar to the present case and will ably pursue this matter. Normally, our analysis concerning the standards of Rule 23(a)(4) would end at this point. However, whether this particular plaintiff will be able to fairly and adequately protect class interests must be considered in light of the amendment to the damages provision of the Act.

■ Under § 1640, as amended, the recovery made by a class member can be a lesser amount than if that person brought an individual action. This is due to the statutory limitation on total recovery for a class action set at the lesser of $100,000 or 1 per centum of the creditor's net worth. Assuming, for example, that a class were to consist of more than one thousand (1,000) persons, each person would recover less than $100. This would be less than the $100 minimum recovery allowed in the case of an individual suit. Thus, since a named plaintiff might be forced to take less by bringing a class action, the interests of the rest of the class members might not be adequately protected. The "problem" as posed does not exist in the present case. At argument on the motion for class action certification, counsel stated that plaintiff was not seeking separately measured damages, but would accept her pro rata share of the total recovery, even in the event the shares were less than $100. Thus, there is no doubt that plaintiff will adequately and fairly protect the interests of the class.

The few cases which have construed § 1640(a), as amended, do not compel a conclusion otherwise. *Weathersby v. Fireside Thrift Company*, No. 73–0563 (N.D.Cal., filed Feb. 25, 1975), is factually distinguishable from the present case. The plaintiff and an intervenor in

7. *See* Plaintiff's Memorandum in Support of Motion for Determination of a Class at 2; Plaintiff's Supplemental Brief in Support of Motion for a Class Action at 11 n. 9, 31.

that case sought to represent approximately one hundred and thirty (130) persons. They alleged that the form which the defendant used in connection with its loan failed to comply with the disclosure requirements of the Act and Regulation Z. The plaintiff hoped to recover $605, and the intervenor $460. Unlike plaintiff, they asked the court to provide, in the order certifying the class, that their individual recovery would not be affected by the certification. The court quite rightly held that, because the plaintiff and intervenor might receive money that would otherwise go to unnamed class members, they could not fairly and adequately protect the interests of the class. In *Boggs v. Alto Trailer Sales, Inc., supra,* 511 F.2d at 118, the court pointed out the problem by way of a hypothetical, but remanded to the district court for a determination on the merits of the class action motion. Finally, in *Postow v. Oriental Building Association, supra,* 390 F.Supp. at 1140–1141, the court, which ultimately granted a motion for a class action, held that notwithstanding this hypothetical problem the representative parties would fairly and adequately protect the interests of the class.

■ Having decided that the prerequisites of Rule 23(a) have been established, the Court must now decide whether the case may proceed as a 23(b)(3) class action. Defendants argue that, because there may have been variations in the circumstances of the payment agreements made by potential class members, questions of fact common to the members of the class do not predominate over questions affecting only individual members. Specifically, they contend that the Court would have to determine in each particular transaction how the negotiations were conducted, what arrangements were made, with emphasis on specific terms of the arrangements, what disclosures were made or not made, what factors necessitated the entering of a new arrangement, and many other factual questions. In addition, defendants raise certain defenses alleging that disclosures need not be given in these types of transactions because they are subsequent occurrences and/or informal workout agreements. *See* 15 U.S.C. § 1634; 12 C.F.R. § 226.6(g).

The short answer to defendants' first contention is that whatever took place prior to the consummation of the modified payment agreements is irrelevant as far as this action is concerned. What is important is (1) whether there was an acceleration, (2) whether the modified payment agreements finally arrived at were extensions of consumer credit as statutorily defined in 15 U.S.C. § 1631(a); 12 C.F.R. § 226.2(k), and (3) whether the required disclosures were given. 12 C.F.R. § 226.8. As to the first two issues, an examination of Domestic's and Sidcon's records should reveal who may be members of the class. That is, given an acceleration, which modified payment schedules involve more than four installments or a finance charge?[8] Concerning the third issue, discovery has revealed that both Domestic and Sidcon do not make Truth in Lending disclosures in connection with these transactions.[9]

■ Regarding defendants' second contention, assuming that the defenses raised are meritorious, they do not in any way affect the predominance issue. Indeed, whether or not defendants were required to give the disclosures depends on how this Court categorizes the transactions—a refinancing (12 C.F.R. §

---

8. Such a task does not appear to be unduly burdensome, as both Domestic and Sidcon apparently keep records pertaining to these type transactions. *See* Dep. of Edward J. Maciejewski at 67–68; Exhibits MP–1 & MP–4A attached thereto.

9. *See* Domestic's Answer to Plaintiff's First Set of Interrogatories, #31(a); Sidcon's Answer to Plaintiff's First Set of Interrogatories, #37; Dep. of Edward J. Maciejewski at 62.

226.8(j)), *or* subsequent occurrence (15 U.S.C. § 1634; 12 C.F.R. § 226.6(g)), and/or an informal workout agreement.[10] Such a determination is not properly made in determining a motion for a class action and must wait until the Court reaches the merits of the case. Accordingly, the Court finds that both questions of law and fact common to members of the class predominate over any questions affecting only individual members.

Finally, the Court must determine whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Courts have most often denied class action certification in Truth in Lending cases on the ground of non-superiority, finding that: (1) the damage award of at least $100 per class member would horrendously punish, perhaps annihilate, creditors; and (2) absent a class action, individual claimants still have the incentive to bring suit due to the Act's provisions for a $100 minimum recovery, payment of costs and reasonable attorney's fees.

The massive damage aspect has been removed by the amendment to § 1640(a). Section 1640(a)(2)(B) limits total recovery to the lesser of $100,000 or 1 per centum of a creditor's net worth. Thus, absent actual damages,[11] creditors need no longer fear extinction due to large recoveries in Truth in Lending class actions. *Ratner v. Chemical Bank Trust Company, supra,* 54 F. R.D. at 416.

The argument that the incentive for individual litigation necessitates a finding of non-superiority assumed that the minimum damage provision relates solely to consumer motivation to sue rather than a deterrent to creditors. While such may have been the case prior to the amendment to § 1640(a), Congress, in so amending, recognized that courts were not certifying class actions and that there was a need to encourage voluntary creditor compliance *via* potential class action liability. Note, *Class Actions Under the Truth in Lending Act,* 83 Yale L.J. 1410, 1416–1417, 1429 & n.135 (1974). Second, many relatively unsophisticated borrowers are not conversant enough with Truth in Lending regulations to know they have not received full disclosures, and many claims would go unenforced. "Creditors disregarding their responsibilities under the Act and causing damages to members of a class however limited or extensive should have no assurance that their accumulated responsibility cannot be enforced through [a class action]." *Wilcox v. Commerce Bank of Kansas City, supra,* 474 F.2d at 348. *See Haynes v. Logan Furniture Mart, Inc., supra,* 503 F.2d at 1164; *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 831 (3d Cir. 1973). Thirdly, to deny class action status in all Truth in Lending cases because costs and reasonable attorney's fees are provided for would have the effect of nullifying what Congress attempted to do by amending § 1640(a). This is a "knee jerk" approach which this Court will not follow. While costs and reasonable attorney's fees might provide an incentive to litigate where an alleged violation can be defined as an isolated incident, such is not the case where, as here, there are hundreds of alleged violations almost all of which will go unremedied but for a class action. Therefore, considering the facts of the case, the incentive for indi-

---

10. In support of the proposition that the transactions involved in this case are informal workout agreements, thus exempt from the disclosure requirements, defendants cite an excerpt from a Federal Reserve Board Opinion Letter of July 20, 1970, No. 376. Truth in Lending Special Releases—Correspondence, [1969–1974 Transfer Binder] CCH Consumer Credit Guide ¶ 30,554 at 66,244 (1970). The Court notes that the letter was in response to an inquiry concerning open-end credit accounts. Since this case involves other than open-end credit transactions, the opinion letter is not applicable.

11. *See* note 6 *supra.*

vidual litigation does not preclude a finding that a class action is a superior method by which to proceed.[12]

The Court must also consider whether a class action would be superior in light of a possible reduction in damages to the individual members of the class. *Boggs v. Alto Trailer Sales, Inc., supra,* 511 F.2d at 118–119. In our discussion of Rule 23(a)(4), we noted that, in some cases, due to the aggregate damages limitation, each class member could recover more by suing individually than he could by being a member of the class. Although this might be the case theoretically, there is no evidence here that individual class members would recover anything less than $100. Considering the discretion a district court now has in determining the amount of award (15 U. S.C.A. § 1640(a)(3), *as amended* (Supp. I 1975)), it would be next to impossible to discern, without having fully litigated the question of damages, whether a class

member will ultimately receive less than $100. In the absence of such evidence, the Court will not engage in speculation that such might eventually prove to be the case.[13]

Upon consideration of all the factors in this case, including the modest size of the class, the relative ease by which the class may be ascertained, the lack of interest of members of the class in individually controlling separate actions, and the possibility of vindicating numerous small claims which might otherwise never be adjudicated, the Court finds that a class action is the superior means by which to proceed. Therefore, this action will be maintained as a class action, with the class consisting of all persons in the Eastern District of Pennsylvania: (1) who have entered into consumer credit loan transactions with defendants or others, or have had their payments accelerated upon default by defendants or others;[14]

12. *See Recent Developments, supra* note 6 at 104–105, for a discussion of the problems in bringing a private lawsuit as opposed to a class action in Truth in Lending cases.

13. This problem could be alleviated by explaining, in the Rule 23(c)(2) notice to class members, that in an individual action each member could recover a minimum of $100, whereas if they remain a member of the class there is a possibility that their recovery will be less than $100. Thus, each potential class member would have the opportunity to opt out.

The Court notes the problem concerning the running of the statute of limitations. *See* 15 U.S.C. § 1640(e). This problem appears to have been eliminated, however, by the Supreme Court's holding in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 550–552, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), that the filing of a class action complaint tolls the running of the statute of limitations for the entire class. *Katz v. Carte Blanche Corporation, supra,* 496 F.2d at 761. Although *American Pipe* involved certain class members who had made motions to intervene after the district court had decided against maintenance of a class action, the holding would appear to be equally applicable where a district court grants a class action and certain class members wish

to opt out. In *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court held that in a Rule 23(b)(3) class action, individual notice must be sent to all class members who can be identified through reasonable effort. The notice must contain a statement that each member may request exclusion and pursue his claim separately or remain in the class. In so holding, the Court rejected the plaintiff's argument that class members would not opt out because the statute of limitations had long since run. "This contention is disposed of by our recent decision in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, [94 S.Ct. 756, 38 L.Ed. 2d 713] (1974), which established that commencement of a class action tolls the applicable statute of limitations as to all members of the class." 417 U.S. at 176 n. 13, 94 S.Ct. at 2152.

14. The "others" refers to creditors, besides Domestic, who may have referred delinquent accounts to Sidcon for collection purposes. Sidcon contends that it was acting only as an agent for Domestic, and that plaintiff lacks standing to represent persons whose delinquent accounts were referred to Sidcon by creditors other than Domestic. As to the standing issue, plaintiff does not purport to represent persons other than those who

(2) who, within one year previous to December 13, 1974, the date on which this action was commenced, agreed with defendants to pay the accelerated debt under a modified payment schedule, which contains a finance charge or is payable in more than four installments; and (3) who have not been given the disclosures required by the Act and Regulation Z. Accordingly, the motion for class action will be granted.

have entered into modified payment schedules with Domestic and Sidcon. The "or others" merely serves to identify the original loan transactions which may or may not have been with Domestic. For the purpose of determining liability under the Act, the only transactions that are of legal significance are the agreements which set out modified payment schedules. Since plaintiff allegedly entered into such agreements with both Domestic and Sidcon, there is no problem as to her standing to represent the class.

Sidcon also contends that, since it was acting only as agent for Domestic, the class should be limited to persons whose delinquent accounts were referred to Sidcon by Domestic and not by any other creditors. It is true that the complaint, ¶ 13, does refer to Sidcon acting as agent for Domestic.

However, in paragraphs 4 and 7, plaintiff alleges that Sidcon regularly and as a matter of practice has extended credit to pay off accelerated consumer credit obligations to all of the members of plaintiff's class, for which a finance charge is imposed or which is payable in more than four installments. At argument on the motion for a class action, counsel stated that plaintiff was not suing Sidcon as an agent of Domestic but as a creditor as defined by the Act. Plaintiff also indicated her willingness to amend the complaint to properly rectify the above problem. See Plaintiff's Supplemental Brief in Support of Motion for a Class Action at 13 n. 11. To clear up any ambiguity that might still remain, the Court will instruct plaintiff to amend her complaint in accordance with the Order attached hereto.