Irenio C. BANTOLINA and Gloria B. Bantolina, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

ALOHA MOTORS, INC., a duly authorized corporation, and First Hawaiian Bank, a duly authorized corporation, Defendants.

Civ. No. 75-0295.

United States District Court, D. Hawaii.

Aug. 26, 1976.

Linda-Mei Leong, Karen M. Radius, John Harris Paer, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiffs.

Vernon F. L. Char, Denis C. H. Leong, Damon, Shigekane, Key & Char, Honolulu, Hawaii, for Aloha Motors, Inc.

Nicholas C. Dreher, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for First Hawaiian Bank.

### DECISION

WONG, District Judge.

*Statement of the Case*

Irenio and Gloria Bantolina, the plaintiffs herein, purchased an automobile from Aloha Motors, Inc. (Aloha) on November 25, 1974. The terms of the purchase and certain disclosures required by the Truth in Lending Act were contained in a "Retail Installment Contract and Open End Credit Plan" provided to plaintiffs at the time of the purchase.

The contract was assigned by Aloha Motors, Inc. to First Hawaiian Bank (First Hawaiian). The manner in which Aloha and First Hawaiian managed the Bantolinas' credit purchase was allegedly typical of defendants' common business practice at the time.

Plaintiffs allege that Aloha provided 786 customers with these disclosure statements and thereafter presented each of these 786 contracts to First Hawaiian for assignment and that First Hawaiian accepted each contract. First Hawaiian then sent each customer a standard-form periodic billing statement.

Plaintiffs have now moved that this Court enter an order determining that this suit shall be maintained as a class action on behalf of plaintiffs and all persons similarly situated. Plaintiffs have further moved that this Court define the class as all natural persons in the State of Hawaii who, within the calendar year prior to the filing of the instant complaint, purchased an automobile in a consumer credit transaction from Aloha Motors, Inc. wherein the disclosure statement provided to each consumer used the standard form "Retail Installment Contract and Open End Credit Plan" and further where each contract was then assigned to First Hawaiian.

The issue of certifying a class for truth-in-lending litigation is one of first impression in this district in light of a recent amendment to the Truth in Lending Act. For the reasons which follow, this Court believes that a reading of the Truth in Lending Act together with Fed.R.Civ.P. 23 necessitates the certification of a class action in the instant case.

*Discussion*

Before 1974, "[t]he clear trend of authority for actions alleging a violation" of the Truth in Lending Act held that ". . . class actions are inappropriate."[1] In October of that year, however, § 130(a) of the Act, 15 U.S.C. § 1640(a), dealing with civil liability for a failure to disclose, was amended to include class actions specifically.

The question here is whether the amendment to § 1640(a), when considered together with Fed.R.Civ.P. 23, allows this Court, in exercising its broad discretion,[2] to certify the plaintiffs as representatives of a class seeking relief under the Act.

Rule 23(a), *Prerequisites to a Class Action*, states four standards to determine

---

**1.** *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 n.17 (9th Cir. 1973). However, preamendment courts of appeals case authority did not preclude class action enforcement of Truth in Lending. 3B J. Moore & J. Lucas, Moore's Federal Practice ¶ 23.92[2], at 23–78.1 n. 15 (1975 Supp.); *see also Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir. 1975). Moreover, in *Wilcox v. Commerce Bank*, 474 F.2d 336 (10th Cir. 1973), one such preamendment case, the question of class-action treatment for Truth in Lending was characterized as having been "before numerous district courts with varying results." *Id.* at 340 & n. 13. Other preamendment cases dealing with class actions include *Haynes v. Logan Furni-*

*ture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) and *Katz v. Carte Blanche*, 496 F.2d 747 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

**2.** "Students of the Rule have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature." The words are those of Judge Frankel in *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y.1972), which has been termed "[t]he seminal case on denial of class action status." *Haynes v. Logan Furniture Mart, Inc.*, *supra* note 1, at 1164 (Judge Pell).

whether an action may be maintained as a class action. These are: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class.

Defendants have not seriously disputed, and this Court does not doubt, that plaintiffs have met the requirements stated in subdivisions (1), (2), or (3). Defendants strongly urge, however, that the representative parties cannot fairly and adequately protect the interests of the class as required in subdivision (4). In addition, defendants urge that plaintiffs have also failed to satisfy one of the subdivisions of Rule 23(b), *Class Actions Maintainable.*

Defendants observe that plaintiffs' memorandum in support of their motion for class certification reflects an attempt to qualify under subdivision (b)(3),[3] the requirements of which are: (1) that the court find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendants argue that neither of these requirements has been met in the present case. In marshalling their catalog of alleged defects which makes class certifica-

tion inappropriate in this case, defendants have first directed this Court's attention to the many preamendment cases which denied use of the device. The reasoning of those cases, defendants contend, has continued vitality for even postamendment litigation.

The preamendment denials of class certification were varied in their rationales. In *Ratner v. Chemical Bank York Trust Co.,*[4] for example, Judge Frankel stated:

> [D]efendant points out that (1) the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive.[5]

While conceding that the danger of "annihilating punishment" has been lessened by the amendment to the Act which limits damages and gives the court discretion in determining any class recovery,[6] defendants nevertheless argue that the availability of a minimum statutory recovery, as well as reasonable attorney's fees and costs, obviates the need for the class-action incentive.

■ Defendants also argue that the class-action device is not superior within the meaning of Rule 23(b)(3) in that substantial benefits do not result[7] and actual damages

---

**3.** Plaintiffs in oral argument disputed defendants' attempt so to limit them, pointing out that plaintiffs had alleged that they would establish that "each of the requirements of Rule 23(a), (b)(1), (b)(2) and (b)(3)" is satisfied and that the class should be certified. Memorandum in Support of Motion for Determination of Class, Apr. 13, 1976, at 2. Since this Court has decided to find that the instant suit is maintainable as a (b)(3) class action, it need not deal with the question of whether plaintiffs have qualified under any other subdivision of 23(b).

**4.** *Supra* note 2.

**5.** *Id.*

**6.** *See infra* note 10 for text of amendment. The amendment outlines a number of factors which the court shall consider when determining the amount of a class award.

**7.** *See, e. g., Gerlach v. Allstate Insurance, Co.,* 338 F.Supp. 642, 646 (S.D.Fla. 1972), citing the Notes of Advisory Committee on Rules, 39 F.R.D. 69 (1966). The Notes state in pertinent part:

> In the situations to which this subdivision relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases

are not involved.[8] Moreover, defendants allege that there are factual and legal questions in the instant case affecting only individual class members, and, therefore, common questions do not predominate over individual questions as also required by Rule 23(b)(3).

The 1974 amendment to the Act, defendants further argue, has not cured any of these deficiencies, but instead has created another reason for courts to deny class-action relief in truth-in-lending cases: the named plaintiffs have a conflict of interest with the unnamed represented class in that the named plaintiffs are not willing to accept their pro rata share of the class recovery but wish instead to receive whatever award they would have received in an individual suit.[9]

Plaintiffs, on the other hand, argue that any prior judicial misgivings about the appropriateness of the class-action device in truth in lending is more than overcome by the purpose and effect of the 1974 amendment and that the Rule 23 defects that defendants cite are insubstantial at best.

■ This Court turns first to the amendment here in question which is set forth in the margin.[10] This Court agrees with the

---

in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. [*Id.* at 102–103.]

**8.** Defendants cite *Hoffman v. Charnita, Inc.,* 58 F.R.D. 86, 96 (M.D.Pa. 1973); *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939, 951–952 (N.D.Iowa 1972); *Shields v. First National Bank of Arizona,* 56 F.R.D. 442, 446 (D.Ariz. 1972); *Kroll v. Cities Service Oil Co.,* 352 F.Supp. 357, 360–361 (N.D.Ill. 1972); *Haynes v. Logan Furniture Mart, Inc., supra* note 1, at 1165; and *Wilcox v. Commerce Bank, supra* note 1, at 347.

All of defendants' cases are preamendment decisions. These cases are clearly distinguishable or stand simply for the proposition that the presence of actual damages must be considered in the preamendment context as one of a totality of circumstances which must be factored into the court's exercise of discretion. The 1974 amendment, however, renders such a preoccupation with actual damages unnecessary since its legislative history indicates that Congress expressly considered and decided that the class-action remedy should not be limited to actual damages. *See infra* note 11.

Under § 1640(a)(1) and (a)(3), moreover, any "actual damage sustained," and cost and attorneys' fee would be in addition to any class recovery. Thus it seems incongruous that defendant should argue that there must be actual damages before the class is certified, when by the express language of the statute itself, any class award would be considered apart from actual damages.

Indeed, the presence of any actual damages is but one relevant factor which the court "shall consider" in determining the amount of award in any class action. The question of such actual damages seems better decided incident to a determination on the merits, not raised on a motion to determine and certify class.

**9.** This problem, identified in *Boggs v. Alto Trailer Sales, Inc., supra* note 1, at 118–119, has also been discussed in *Agostine v. Sidcon Corp.,* 69 F.R.D. 437 (E.D.Pa. 1975).

**10.** 15 U.S.C. § 1640(a), *as amended,* (Supp. IV 1974), states:

§ 1640. Civil liability—Individual or class action for damages; amount of award; factors determining amount of award

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

The Federal Reserve Board had originally recommended that the class-action liability be

plaintiffs that the legislative history of the amendment clearly reveals a congressional intent to encourage the use of class actions as an important tool in enforcing Truth in Lending.[11]

The possibility of class-action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits "from the ineffective 'nuisance' category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance." [12]

*Fair and Adequate Representation*

An appropriate point of embarkation in dealing with defendants' objections to the class device, and plaintiffs' response to them, is Judge Zirpoli's opinion in *Weathersby v. Fireside Thrift Co.*,[13] a postamendment decision. In *Weathersby*, Judge Zirpoli denied class certification because: "This attempt puts several strains on the class action mechanism that cannot be reconciled with Rule 23." [14]

"The fundamental problem is the limitation on total recovery, which serves to penalize plaintiffs for representing a large class." The gist of this reasoning is that a class of more than 1,000 members would permit individual recoveries of less than the statutory minimum of $100. Thus if the court had to award the representatives their statutory awards, while at the same time limiting class members to a division of the pot, "the court would raise the possibility that it would award to plaintiffs money that would otherwise go to unnamed members of the class." As a result, Judge Zirpoli could not conclude that the named representatives "will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) or that the class action is superior to other available methods for the fair and efficient adjudication of the controversy as required by Rule 23(b)(3).[15]

the greater of *$50,000* or 1 percent of net worth. However, "[t]he limitation on class action suits was further limited to the lesser of $100,000 or 1 percent of the net worth of the creditor to protect small business firms from catastrophic judgments." The House and Senate Conference Committee Report (No. 93–1429) *cited in* 1974 U.S. Code Cong. & Admin. News, p. 6153.

11. The Senate Committee on Banking, Housing and Urban Affairs, which reported on the Truth in Lending Amendments here in question, noted that from the time of the *Ratner* decision, *supra* note 2, to the time the Senate report was prepared, only one court in 22 had affirmed class action status and that court only after plaintiffs amended their complaint to sue solely for actual damages. The Committee recognized "that consumers have not obtained much relief" because of the courts' reluctance to use the class-action device. The Committee further observed:

In reviewing alternative solutions to the problem, the Committee considered a proposal to leave the present law unchanged. This approach was advocated by the finance company industry on the theory that class action suits under Truth in Lending other than for actual damages were inappropriate, were not specifically authorized by the Truth in Lending Act, and would be ultimately held to be illegal per se by the courts.

This approach was not approved by the Committee. The Committee believes the present ambiguities and uncertainties with respect to class action suits under Truth in Lending should be clarified. Moreover, the Committee agrees with the Federal Reserve Board that "potential class action liability is an important encouragement to the voluntary compliance which is so necessary to insure nationwide adherence to uniform disclosure" and that such remedies should not be restricted to actual damages. As the Committee pointed out in its report on similar legislation last year, "Most Truth in Lending violations do not involve actual damages and . . . some meaningful penalty provisions are therefore needed to insure compliance." [Senate Comm. on Banking, Housing and Urban Affairs, Truth in Lending Amendments, S. Rep. No. 93–278, 93d Cong., 1st Sess. 14–15 (1973)]

12. Excerpt from Federal Reserve Board, 1972 Annual Report on Truth in Lending, *cited in* "Additional Views of Messrs. Proxmire and Hathaway," Senate Report, *supra* note 11, at 36–37. *Also cited at* 119 Cong. Rec. 25415 (1973) (remarks of Mr. Moss).

13. 5 CCH Consumer Credit Guide ¶ 98,640, at 88,179 (N.D.Cal. 1975).

14. *Id.* at 88,180.

15. *Id.* at 88,181.

In response to the plaintiffs' proposed solution in *Weathersby* that notice be sent to class members to permit them to opt out, the *Weathersby* court found "several fatal defects" in the proposal. First, it noted that the statute of limitations had run and thus the opt-out choice was not an option at all. Second, since any class member could be represented by counsel, a "race to the courthouse" would be encouraged by those seeking to share in the statutory recovery, to the detriment of those who may have borne a substantial amount of the responsibility or of those remaining members of the class. Third, it found that the proposed solution seemed likely to limit the discretion Congress intended to repose in the courts since a large number of named plaintiffs who have opted out of the unnamed class would increase the amount of minimum recovery required and thus limit the court in its scaling of the eventual class award.[16]

The *Weathersby* court therefore held that the "differential treatment plaintiff seeks is prohibited by Rules 23(a)(4) and 23(b)(3)."[17] As did the court in *Weathersby,* the defendants here put great emphasis upon whether the plaintiffs will "fairly and adequately protect the interests of the class," and whether "a class action is superior to other available methods for the fair

and efficient adjudication of the controversy."

■ In the present case, however, this Court believes that the problems identified by Judge Zirpoli do not exist. Here, the named representatives of the class will be required to share in the class award, if any, and these representatives will not be allowed to have a separate statutory recovery apart form any class award.[18]

While the statute does not expressly bar such a dichotomized procedure allowing separate recovery for class representatives, neither does it expressly authorize it. This Court will not allow a remedy with so substantial an effect to be used by construing congressional silence as congressional assent. Where Congress could have easily provided for separate statutory recovery for class representatives but failed to do so, this Court will not so easily engage in judicial legislation.

In the circumstances of this case, therefore, this Court believes that a fair and reasonable exercise of discretion mandates that the named plaintiffs share in a class award if any is obtained. The plaintiffs thus have the option of either proceeding with the class action or withdrawing their motion for certification as a class action and proceeding on an individual basis as before.[19]

---

16. *Id.*

17. *Id.* at 88,182.

18. Plaintiffs have cited five cases for the proposition that "numerous courts have certified class actions in Truth-In-Lending cases since the 1974 amendments." Plaintiffs' Memorandum in Support of Motion for Determination of Class at 8. These cases are: *Goldman v. First National Bank,* 532 F.2d 10 (7th Cir. 1976); *Agostine v. Sidcon Corp.,* 69 F.R.D. 437 (E.D. Pa.1975); *Postow v. Oriental Building Ass'n,* 390 F.Supp. 1130 (D.D.C. 1975); *Clausen v. Beneficial Finance Co.,* Civ. No. 74–2642 (N.D. Cal. Aug. 1975); and *Haynes v. Logan Furniture Mart, Inc.,* Civ. No. 70–C–1827 (N.D. Ill. Orders of Jan. 25, 1975 and May 27, 1975).

   Except for *Agostine,* where the named plaintiff agreed to accept a pro rata share of the total recovery, 69 F.R.D. at 445, and *Haynes,* where a separate award apart from a class recovery was given named plaintiffs, it is unclear as to how the issue of a differential in treatment was resolved in these cases. For the

reasons cited in the text, however, this Court believes that plaintiffs here may obtain only a pro rata share of any potential class recovery.

19. Had this court decided to allow named plaintiffs to recover an award, if any, separately from the unnamed class members, it would not have believed itself constrained to reject the proposed solution, as did Judge Zirpoli in *Weathersby,* that unnamed class members be allowed to opt out, and thus cure any defects in fair and adequate representation or in conflict of interest by the named representatives. Fed.R. Civ.P. 23(c)(2) and (c)(3). 3B J. Moore & J. Lucas, Moore's Federal Practice ¶ 23.45[2], at 23–752 & n.6.

   The Supreme Court has stated that the "commencement of a class action tolls the applicable statute of limitations as to all members of the class." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n.13, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), *citing American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *rehearing denied* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974). *See Agos-*

*Common Questions of Law and Fact Predominate*

■ The thrust of defendants' contention that the requirement that common questions do not predominate over individual ones is that there exist potential counterclaims against members of the proposed class and, also, there is a need to determine with regard to each member of the proposed class whether the automobile involved was purchased for business or commercial purposes or for personal, family, or household purposes.

This Court has already ruled that defendants' causes of action stated in its counterclaim are not federal causes of action and cannot be considered compulsory under the Federal Rules of Civil Procedure.[20] More-

over, it has been held that counterclaims can only be pursued against the named plaintiffs in a suit.[21] In this instance, therefore, the prospect of dealing with the defendants' counterclaims in this federal court action is virtually nonexistent.

Additionally, while there may be some difficulties in determining whether some class members are barred from claiming relief under the Truth in Lending Act because of the commercial nature of the transaction,[22] this Court does not believe that such a potential complexity is overly serious or overshadows the advantages the class-action device provides in this case.[23] As a result, this Court finds that common questions predominate over individual ones and that the requirements of Rule 23(b)(3) have been met in this case.[24]

tine v. Sidcon Corp., supra note 9, at 448 n.13. The instant suit was filed on August 27, 1975. Within the class are those who were involved in transactions during the preceding one-year period. 15 U.S.C. § 1640(e). Since the statute is tolled with the commencement of the class action, all members of the class who opt out will be allowed to file their own actions.

With regard to the possibility that a class action in which the named representatives are allowed their full statutory recovery would set off a "race to the courthouse" by potential intervenors, this Court observes that truth-in-lending suits in this district have been pursued primarily by the Legal Aid Society and only a few other private attorneys notwithstanding the fact that civil remedies under the Act have been available since 1968. Few races to the courthouse to file truth-in-lending suits have ever ensued.

In any event, this Court intends to fully exercise its broad discretion to insure that any intervention will be timely and proper. *Johnson v. San Francisco Unified School District,* 500 F.2d 349, 354 n.7 (9th Cir. 1974).

With regard to the statement in *Weathersby* that the congressional intent to repose discretion in the courts to determine the amount of a class-action award would be undercut by a large number of named plaintiffs, each seeking full statutory recovery, this Court believes that the overriding congressional purpose to encourage industry-wide compliance, when coupled with this Court's broad discretion in determining the representatives of the class, would have taken precedence over the speculative injury that might have arisen had the court's discretion in fashioning a class award been so limited.

**20.** Adopting the reasoning set forth in *Roberts v. National School of Radio and Television*

*Broadcasting,* 374 F.Supp. 1266 (N.D.Ga. 1974), this Court on January 7, 1976, ordered that defendant Aloha's counterclaim that plaintiffs had defaulted in their installment contract payments be dismissed without prejudice. This Court observed that the counterclaim was based "solely on state law," had "no independent federal jurisdiction," and would "unduly complicate the expeditious resolution of TIL litigation." The counterclaim, consequently, was found to be noncompulsory and subject more appropriately to resolution in the state courts. *But see Mims v. Dixie Finance Corp.,* No. C75-627A (N.D.Ga. May 6, 1976).

**21.** *Donson Stores, Inc. v. American Breweries Co.,* 58 F.R.D. 485, 489–490 (S.D.N.Y. 1973); *Dennis v. Saks & Co.,* 1975–2 CCH Trade Cas. ¶ 60,396, at 66,745 (S.D.N.Y. 1975). Some courts have even gone as far as ruling that the representative party in a shareholder derivative suit is not an opposing party who can be subjected to a counterclaim in his personal capacity under Fed.R. Civ.P. 13. *See, e. g., Tryforos v. Icarian Development Co., S.A.,* 49 F.R.D. 1 (N.D.Ill. 1970); 3 J. Moore & J. Lucas, Moore's Federal Practice ¶ 13.06[1], at 13–129 & n.3.

**22.** 15 U.S.C. § 1603(1) states: "This subchapter does not apply to the following: (1) Credit transactions involving extensions of credit for business or commercial purposes, or to government or governmental agencies or instrumentalities, or to organizations."

**23.** *Haynes, supra* note 1, at 1165 & n.4.

**24.** It almost goes without saying that this class action is superior to other available methods of adjudication, providing economies of time, ef-

*Conclusion*

Having found that plaintiffs have met and fulfilled the requirements that are stated in Rule 23 concerning the prerequisites for class action and the types of class actions maintainable, this Court will grant the plaintiffs' motions for determination and certification of class.

Upon giving notice of the class action, however, plaintiffs will insure that potential class members are advised of the following: that should the plaintiffs prevail on the merits, the unnamed class members will share with them in a class recovery which will be determined by the Court; that the class recovery, if any, upon its division among the members of the class may individually amount to only nominal damages which would be less than the minimum statutory recovery for each class member; and that each class member may request to be excluded from the class by a specified date and bring an individual suit should that class member so desire.

Plaintiffs, as prevailing party, will prepare the appropriate order.

fort, expense, and uniformity without sacrificing fairness. The class-action device will provide these substantial benefits by avoiding the need to try each individual case separately, by reposing control in the hands of plaintiffs as represented by Legal Aid Society attorneys who possess both expertise and experience in this area, by litigating in a federal forum an important question of federal law without being faced with the distraction of possibly related state claims. And since the undesirable results—such as annihilating punishment— have been cured by the amendment in limiting damages, and other factors—such as the availability of minimum statutory recovery and reasonable attorneys' fees, and such as the absence of actual damages—which courts have heretofore used as indicia of the non-superiority of class-action treatment have been rendered unpersuasive by the congressional intent to go beyond actual damages and foster the use of the class-action device as an incentive for voluntary national compliance with the Act, this Court is able, with little effort, to find that the class-action device is clearly superior to other available methods of' adjudication.

Additionally, as the Seventh Circuit stated in *Goldman v. First National Bank of Chicago, supra* note 18, at 15:

We find the decision in *Haynes* does provide guidance. We suggested that although, in Truth in Lending cases, procedural fairness with respect to

protecting defendants from crushing damages predicated on the statutory minimum recovery is an important consideration in determining the superiority of the class action mode of adjudication, it is at least equally important to prevent violators of the Act from limiting recovery to a few individuals where actual, wide-spread noncompliance is found to exist.

In the present case, widespread noncompliance with the Act has been alleged and, in turn, has become a strong and persuasive consideration in this Court's finding of superiority of the class-action device, especially when, as here, the countervailing consideration of "crushing damages" has been considered inconsequential by the 1974 amendment.